

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
SHELLY A. LEONARD, ESTHER
ALEXANDER, BRIDGETT HERRERA,
VELICIA MATA, LeRON DAVIS, and
ASHLEY SULLIVAN, individually and as
parents and natural guardians of their minor
children and on behalf of all others similarly
situated,

               Plaintiffs,

            -against-

ABBOTT LABORATORIES, INC.,

               Defendant.
-----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
10-CV-4676(ADS)(WDW)

**APPEARANCES:**

**Blau, Brown & Leonard, LLC**
*Attorneys for the plaintiffs*
224 West 30th Street, Suite 809
New York, NY 10001
    By:  Jason T. Brown, Esq.
          Steven Bennett Blau, Esq., Of Counsel

**Patterson, Belknap, Webb & Tyler LLP**
*Attorneys for the defendant*
1133 Avenue of the Americas
New York, NY 10036
    By:  John D. Winter, Esq., Of Counsel

**SPATT, District Judge.**

      This case arises from the recall by Abbott Laboratories, Inc. ("Abbott" or "the

Defendant") of five million containers of its Similac brand infant powder formula that were

potentially contaminated with beetle parts and larvae, which could cause gastrointestinal

discomfort and refusal to eat. The plaintiffs allege that Abbott engaged in unfair and deceptive

practices by misrepresenting the safety of Similac and failing to timely warn consumers of the

1

dangers associated with the contaminated product in violation of the consumer protection statutes in New York, Texas, Ohio, and New Hampshire.

Presently before the Court is a motion by Abbott for judgment on the pleadings and a motion by the plaintiffs to amend the complaint. For the reasons set forth below, the Court grants in part and denies in part both motions.

## I. BACKGROUND

Abbott Laboratories, Inc. formulates, designs, manufactures, markets, advertises, distributes, and sells infant powder formulas under the brand name Similac. In September 2010, during an internal quality review at its Sturgis, Michigan facility ("the Sturgis Facility"), Abbott detected the presence of a common warehouse beetle and its larvae in its powdered formula. Subsequently, on September 20, 2010, Abbott notified the United States Food and Drug Administration ("FDA"), which determined that "while the formula containing these beetles poses no long-term health problems, there is a possibility that infants who consume formula containing the beetles or their larvae could experience gastrointestinal discomfort and refusal to eat as a result of small insect parts irritating the GI tract". (FDA Press Release, September 27, 2010, Knobler Decl. in Support of Abbott's Motion for Judgment on the Pleadings, Ex. B.) As a result, on September 22, 2010, Abbott recalled five million containers of Similac infant formula products ("the Recall" or "the Recall program"). The details of the Recall program were set forth in the Declaration of Laurie Boogard filed in a related case, Vavak v. Abbott Laboratories, Inc., No. SACV-10-1995-JVS (C.D. Cal.), and submitted to this Court as an attachment to Abbott's June 28, 2011 Notice of Supplemental Authority (Docket Entry # 19).

The plaintiffs in this case are: Shelley A. Leonard, a resident and citizen of the State of New York ("the New York Plaintiff"); residents and citizens of the State of Texas Esther

Alexander, Bridgett Herrera, and Velicia Mata ("the Texas Plaintiffs"); LeRon Davis, a resident and citizen of the State of Ohio ("the Ohio Plaintiff"); and Ashley Sullivan, a resident and citizen of New Hampshire ("the New Hampshire Plaintiff" and collectively "the Plaintiffs"). According to the Plaintiffs, they each purchased the recalled formula during an undefined "relevant time period", rather than purchasing a less expensive alternative, based on various statements by Abbott that indicated that Similac was safe for consumption by infants. The Plaintiffs also allege that their infant children became ill after consuming the contaminated Similac formula.

On October 10, 2010, the Plaintiffs commenced this action against Abbott in their individual capacity, as parents and natural guardians of their minor children, and as representatives of putative classes of similarly situated individuals from their respective states. In the complaint, and the amended class action complaint filed on December 2, 2010, the Plaintiffs seek declaratory, injunctive, and monetary relief based on Abbott's alleged unfair and deceptive acts and practices in misrepresenting that Similac was "safe for the consumption by infants" and failing to warn consumers or recall the contaminated formula sooner, in violation of: (1) New York General Business Law § 349 ("NYCPA"); (2) the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPA"), Tex. Code. Bus. & Com. § 17.41, *et. seq.*; (3) the Ohio Uniform Deceptive Trade Practices Act ("ODTPA"), Ohio Rev. Code Ann. § 4165, *et. seq.*, and Uniform Consumer Sales Practices Act ("OCSPA" and together with the ODTPA the "Ohio statutes"), Ohio Rev. Code Ann. § 1345, *et. seq.*; and (4) the New Hampshire Consumer Protection Act ("NHCPA"), N.H. Rev. Stat. Ann. § 358-A, *et. seq.* (collectively the "consumer protection statutes").

On March 15, 2011, Abbott filed a motion for judgment on the pleadings seeking the dismissal of the Plaintiffs' claims under the consumer protection statutes and the cause of action

seeking injunctive relief for failure to state a claim. In addition, Abbott also sought dismissal of: (1) any claim predicated on Abbot's representation that it is "dedicated to . . . complying with all applicable laws and regulations in the countries where [it] do[es] business" (Am. Compl., ¶ 24), or its failure to comply with certain federal laws, as preempted by federal law; (2) any class claim under the Ohio Uniform Consumer Sales Practices Act because the statute does not permit a class action under the circumstances alleged; (3) any claim under the Ohio Uniform Deceptive Trade Practices Act because the statute does not confer standing on a consumer; and (4) any claim under the Texas Deceptive Trade Practices-Consumer Protection Act because the Plaintiffs failed to provide the requisite notice under the statute.

On September 21, 2011, the Plaintiffs moved to amend their complaint to: (1) include Kristie Pagan in the caption of this matter as a party plaintiff and potential representative of the putative New York class; (2) remove plaintiff Shelly A. Leonard from the caption in this matter and dismiss her claims without prejudice with leave to renew her individual claims or any claims on behalf of her infant/child in the event the Court certifies a class under Federal of Civil Procedure 23; (3) include additional factual contentions "clarifying and amplifying the false, misleading, fraudulent and deceptive business practices employed by [the Defendant]" (Pl.'s Br. at 1); and (4) to remove the allegation expressly waiving the New York Plaintiffs' right to seek punitive damages under New York General Business Law § 349. Attached to the Plaintiffs' motion to amend was a proposed second amended complaint containing these changes.

Subsequently, on January 20, 2012, the Court directed the parties to submit supplemental briefing on whether the Recall program instituted by Abbott mooted the Plaintiffs' claims under the consumer protection statutes, which was an issue raised by Abbott in opposition to the motion to amend.

The Court addresses the two motions below.  However, because an analysis of the

Defendant's motion for judgment on the pleadings is intertwined with an analysis of the

Plaintiffs' motion to amend to add factual allegations, the Court will frame its analysis around the

Plaintiffs' motion to amend.  Thus, the Court addresses the legal arguments asserted in the

Defendant's motion for judgment on the pleadings in conjunction with the motion to amend

futility analysis.

## II.  LEGAL STANDARDS

### A.  Motion to Amend

On February 18, 2011, United States Magistrate Judge William D. Wall issued a

scheduling order, setting a September 2, 2011 deadline for joining new parties and amending the

pleadings.  Although the parties subsequently agreed to changes to the discovery cut-off

deadlines, the deadline for joining new parties and amending the pleadings remained as

September 2, 2011.  Contrary to the Plaintiffs contention, an extension to the discovery deadlines

does not automatically extend the deadline to join new parties or amend the pleadings.  The

Plaintiffs' instant motion to amend was filed on September 15, 2011, almost two weeks after the

deadline set in the scheduling order.  As such, the Court must consider Fed. R. Civ. P. 16(b)

("Rule 16"), which "may limit the ability of a party to amend a pleading if the deadline specified

in the scheduling order for amendment of the pleadings has passed."  Kassner v. 2nd Avenue

Delicatessen, Inc., 496 F.3d 229, 243 (2d Cir. 2007); see Fed. R. Civ. P. 16(b)(4) ("A schedule

may be modified only for good cause and with the judge's consent.").

"Where a scheduling order has been entered, the lenient standard under Rule 15(a), which

provides leave to amend 'shall be freely given,' must be balanced against the requirement under

Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of

good cause.'" <u>Grochowski v. Phoenix Construction</u>, 318 F.3d 80, 86 (2d Cir. 2003) (quoting

older versions of Rule 15(a) and Rule 16(b)). "[A] finding of 'good cause' depends on the

diligence of the moving party." <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 340 (2d Cir.

2000). To satisfy the good cause standard "the party must show that, despite its having exercised

diligence, the applicable deadline could not have been reasonably met." <u>Sokol Holdings, Inc. v.</u>

<u>BMD Munai, Inc.</u>, No. 05-CV-3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (citing

<u>Rent-A-Center Inc. v. 47 Mamaroneck Ave. Corp.</u>, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)).

However, the good cause standard is not satisfied when the proposed amendment rests on

information "that the party knew, or should have known, in advance of the deadline." <u>Id.</u>

(collecting cases).

If a court finds that good cause for extending the deadline exists, a party still has the

burden to show that the proposed amendment is permissible under Federal Rules of Civil

Procedure 15 ("Rule 15"). Rule 15(a)(2) provides that "a party may amend its pleading only

with the opposing party's written consent or the court' leave" and that "[t]he court should freely

give leave when justice so requires." A court should deny leave to amend only upon "undue

delay, bad faith or dilatory motive on the part of the [moving party], repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the [non-moving party,] . . .

[or] futility." <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); <u>see also</u>

<u>Aetna Cas. & Sur. Co v. Aniero Concrete Co., Inc.</u>, 404 F.3d 566, 603–04 (2d Cir. 2005).

Amendments are generally favored because "they tend to facilitate a proper decision on the

merits." <u>Blaskiewicz v. Cnty of Suffolk</u>, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998). However, it

is ultimately "within the sound discretion of the court whether to grant leave to amend." <u>John</u>

<u>Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.</u>, 22 F.3d 458, 462 (2d Cir. 1994) (citing

Foman v. Davis, 371 U.S. 178, 182, 9 L.Ed.2d 222 (1962)).  Finally, the party opposing an

amendment has the burden of proving that leave to amend would be prejudicial.  See

Blaskiewicz, 29 F. Supp. 2d at 137–38.

## B.  Motion for Judgment on the Pleadings and Futility

The Defendant has moved for judgment on the pleadings pursuant to Federal Rule of

Civil Procedure 12(c) ("Rule 12(c)").  In general, "the standard for addressing a Rule 12(c)

motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss

for failure to state a claim."  Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). In

addition, the Defendant contends that the Court should deny the Plaintiffs leave to amend the

complaint because the proposed amendments would be futile.  As with a Rule 12(c) motion, a

proposed amendment is futile if the proposed claim could not withstand a Rule 12(b)(6) motion

to dismiss.  Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002).  The Court therefore

applies the Rule 12(b)(6) standard in deciding the Defendant's motion for judgment on the

pleadings and in assessing the futility of the proposed second amended complaint.

Under the now well-established Twombly standard, a complaint should be dismissed only

if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its

face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929

(2007).  The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule

12(b)(6) is guided by two principles.  Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft

v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a

complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.' " Id. at

72 (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiffs' favor. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Rule 12(b)(6). Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

In addition, in deciding Abbott's motion, the Court considers a number of documents submitted by the parties that are incorporated by reference in the complaint. Furthermore, the Court considers the documents attached to the parties supplemental briefing on the issue of mootness only with respect to that issue, and not with regard to the sufficiency of the allegations in the Plaintiffs' amended complaint or proposed second amended complaint.

### III. APPLICATION

The Plaintiffs seek to amend their complaint to: (1) remove plaintiff Shelly A. Leonard from the caption in this matter and dismiss her claims without prejudice with leave to renew her individual claims or any claims on behalf of her infant/child in the event the Court certifies a class under Federal of Civil Procedure 23 ("Rule 23"); (2) include Kristie Pagan in the caption of this matter as a party plaintiff and potential representative of the putative New York class; (3) remove the allegation expressly waiving the New York Plaintiffs' right to seek punitive damages under the NYCPA; and (4) include additional factual contentions "clarifying and amplifying the false, misleading, fraudulent and deceptive business practices employed by [the Defendant]" (Pl.'s MTA Br. at 1). The Court addresses each of these proposed amendments separately below. Furthermore, as previously stated, the Court addresses the Defendant's motion for judgment on the pleadings in conjunction with the Plaintiffs' motion to amend to add factual allegations.

### A. As to the Plaintiffs' Motion for an Order Permitting Leonard to Voluntarily Dismiss Her Claims Without Prejudice

In the motion to amend, the Plaintiffs seek an order permitting Shelly A. Leonard, named plaintiff of the New York putative class, to voluntarily dismiss her claims without prejudice and with leave to renew her claims in the event the Court certifies the putative class. The basis for this request is that Leonard is an attorney at Blau, Brown & Leonard LLC, the law firm representing the Plaintiffs, and therefore "she cannot serve as a class representative, due to inherent conflicts of interest". (Pls.' MTA Br. at 7–8.) Because the Defendant has filed an answer in this action, the Plaintiffs' motion is properly classified as a motion for dismissal by court order pursuant to Federal Rule of Civil Procedure 41(a)(2) ("Rule 41(a)(2)").

"Rule 41(a)(2) provides that except where all parties agree to a stipulation of dismissal, 'an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.'" Catanzano v. Wing, 277 F.3d 99, 109 (2d Cir. 2001) (quoting Rule 41(a)(2)). In deciding whether to grant a motion for voluntary dismissal without prejudice, courts consider: "(1) the plaintiff's diligence in bringing the motion; (2) any 'undue vexatiousness' on plaintiff's part; (3) the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; (4) the duplicative expense of relitigation; and (5) the adequacy of plaintiff's explanation for the need to dismiss." Id. at 109–10 (quoting Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990)).

Here, the Defendant does not contend that the Plaintiffs have acted with "undue vexatiousness" or that there is a risk of incurring the duplicative expense associated with a dismissed plaintiff commencing a second action. Accordingly, those factors support the Plaintiffs' motion. Rather, the Defendant contends that the Court should deny the motion because: (1) the Plaintiffs should have been aware from the time they commenced this action that Leonard was conflicted from serving as a class representative; (2) although Leonard has not been deposed, Abbott has incurred costs in preparing for her deposition, which was cancelled the day before it was supposed to take place; and (3) the Plaintiffs' explanation for the delay is inadequate because they disingenuously state that Leonard commenced this action in her individual capacity. The Court agrees with the Defendant that the Plaintiffs have offered a wholly insufficient excuse for their delay in moving to dismiss Leonard's claims in her capacity as a named plaintiff.

The Plaintiffs state that "Ms. Leonard rightfully determined to become a plaintiff in this action, in her individual capacity and as parent and natural guardian of her infant-child". (Pls.'

MTA Br. at 7.)  However, both the initial and amended complaints were characterized as "class action complaints" and include class allegations and a cause of action on behalf the "New York Class".  The Court's jurisdiction in this action is premised on the Class Action Fairness Act. Indeed, given that she is asserting a state law claim and her individual damages are below the $75,000 threshold, Leonard could not have commenced this action in federal court without a good faith belief that it could be certified as a class action.  Although it is a fact specific inquiry as to whether an employment relationship between a class representative and class counsel will constitute an insurmountable conflict, see In re Metlife Demutualization Litig., 229 F.R.D. 369, 376 (E.D.N.Y. 2005) ("Courts in this circuit have refused to certify cases involving a potential conflict of interest where attorneys sought to serve as both a class representative and counsel, . . . Nevertheless, no bright line rule exists covering these kinds of employee/plaintiff to employer/class counsel relationships.") (citing Brick v. CPC Int'l, Inc., 547 F.2d 185, 186 (2d Cir. 1976), the Plaintiffs concede that there is an "inherent conflict[] of interest", and do not argue that their delay resulted from a mistaken belief that Leonard was qualified to represent the class.   In contrast to a situation where a named plaintiff seeks to withdraw because facts revealed during discovery indicate that he or she has a conflict with the class, this conflict was known at the time the complaint was filed.  Finally, Leonard, as an attorney, is not an innocent bystander to the errors of her counsel.

Nevertheless, the Court is mindful of the Second Circuit's guidance that "[g]enerally, . . . a voluntary dismissal without prejudice under Rule 41(a)(2) will be allowed if the defendant will not be prejudiced thereby".  Catanzano, 277 F.3d at 109 (internal quotation marks omitted). While the Defendant expended resources in preparation for Leonard's deposition, this does not rise to the level of prejudice sufficient to preclude a plaintiff from withdrawing a claim without

prejudice. Accordingly, the Court grants the Plaintiffs' motion to voluntarily withdraw

Leonard's individual claims without prejudice solely to her right to participate in the class in the

event it is certified.

**B. As to the Plaintiffs' Motion to Permit Pagan to Intervene as a Named Plaintiff and Putative New York Class Representative**

Generally, the dismissal of the named plaintiff's claims before a motion for class

certification has been filed would result in the dismissal of the complaint, or, in this case, the

putative New York class' NYCPA cause of action. See Bowens v. Atl. Maint. Corp., 546 F.

Supp. 2d 55, 76 (E.D.N.Y. 2008) ("The unnamed class members are not technically part of the

action until the court has certified the class; therefore, once the named plaintiffs' claims are

dismissed, there is no one who has a justiciable claim that may be asserted."); see also Phillips v.

Ford Motor Co., 435 F.3d 785, 787 (7th Cir. 2006) ("Strictly speaking, if no motion to certify

has been filed (perhaps if it has been filed but not acted on), the case is not yet a class action and

so a dismissal of the named plaintiffs' claims should end the case."). In order to avoid this result,

the Plaintiffs seek to add Kristie Pagan as a named plaintiff and potential representative of the

putative New York class. The Plaintiffs contend that they did not engage in undue delay in

seeking to add Pagan because she only retained the Plaintiffs' counsel on September 6, 2011, and

they filed the instant motion nine days later.

Under Rule 20(a) of the Federal Rules of Civil Procedure ("Rule 20(a)"), "[a]ll persons

may join in one action as plaintiff if they assert any right to relief . . . arising out of the same

transaction, occurrence, or series of transactions or occurrences and if any question of law or fact

common to all these persons will arise in the action." Rule 20(a) should be liberally interpreted

to "enable the court to promote judicial economy by permitting all reasonably related claims for

relief by or against different parties to be tried in a single proceeding." A.I.A. Holdings, S.A. v.

Lehman Brothers, Inc., No. 97-CV-4978, 1998 WL 159059, at *5 (S.D.N.Y. April 1, 1998) (internal quotation marks and citation omitted).

In addition, Federal Rule of Civil Procedure 21 ("Rule 21") provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; see Garcia v. Pancho Villa's Huntington Vill., Inc., 268 F.R.D. 160, 165 (E.D.N.Y. 2010) (citing Duling v. Gristede's Operating Corp., 265 F.R.D. 91 (S.D.N.Y. 2010)); see also City of Syracuse v. Onondaga County, 464 F.3d 297, 308 (2d Cir. 2006). Rule 21 grants the court broad discretion to permit the addition of a party at any stage in the litigation. Sullivan v. West New York Residential, Inc., No. 01-CV-7847, 2003 WL 21056888, at *1 (E.D.N.Y. Mar. 5, 2003).

Here, it is not the intervention of Pagan herself that the Defendant's oppose, but the intervention of any plaintiff that could continue to litigate this case on behalf of the New York putative class. The Plaintiffs lack of diligence in seeking to substitute a named plaintiff for the putative New York class prior to the deadline set in the scheduling order supports the Defendant's position.

However, at this stage in the litigation, before the Plaintiffs have moved for class certification and where the parties have only engaged in limited discovery, the Defendant would not be prejudiced by the intervention. By contrast, Pagan, as well as the putative New York class would be severely prejudiced by the dismissal of their NYCPA claims. As a result, the Court finds that the interests of justice as well as judicial economy weigh in favor of permitting Pagan to intervene, and therefore grants the Plaintiffs' motion to amend the complaint to add Pagan (hereinafter "the New York Plaintiff") as a named plaintiff and the representative of the putative New York class.

**C.  As to the Plaintiffs' Motion to Amend the Complaint to Remove the Express Waiver of the New York Plaintiffs' Right to Seek Punitive Damages under the NYCPA**

Under the NYCPA, the treble damages available for willful and knowing misconduct are commonly referred to as a type of "limited punitive damages".  <u>Karlin v. IVF America, Inc.</u>, 93 N.Y.2d 282, 291, 690 N.Y.S.2d 495, 499, 712 N.E.2d 662, 666 (N.Y. 1999).  This is because punitive damages above and beyond the trebling of actual damages are not an available remedy under the statute.  <u>See</u> <u>Mayline Enters., Inc. v. Milea Truck Sales Corp.</u>, 641 F. Supp. 2d 304, 310 (S.D.N.Y. 2009).

In the amended complaint, the New York Plaintiff explicitly waived her entitlement to punitive damages under the NYCPA.  (<u>See</u> Am. Compl., ¶ 72 ("ABBOTT is liable to plaintiff and members of the class for compensatory damages.  <u>Plaintiff expressly waives punitive damages available under New York General Business Law § 349, *et. seq.*</u>").)  In the proposed second amended complaint, the underlined sentence is surreptitiously removed.  (<u>See</u> PSAC, ¶ 95 ("ABBOTT is liable to plaintiff and members of the class for all damages and relief available under New York General Law, § 349, *et. seq.*").)  The Court says "surreptitiously" because, in identifying the proposed changes for the Court, the Plaintiffs fail to mention that the proposed second amended complaint asserts a claim for relief previously waived in the amended complaint.  In fact, the Plaintiffs explicitly state that "[t]he averments in the proposed Second Amended Complaint *do not change any legal theories of liability* . . . ."  (Pls.' MTA Br. at 5 (emphasis added).)

As a result of this proposed amendment, the Defendant's potential liability to a New York class would increase threefold.  While increased exposure is not equivalent to the type of prejudice required to preclude an amendment, the enormity of this change highlights why the Court finds it problematic that the Plaintiffs failed to bring it to the attention of the Court.

Furthermore, the Plaintiffs failed to avail themselves of the opportunity in either their moving brief, or their reply brief, to explain to the Court why they delayed in amending the complaint to remove the punitive damages waiver. Nor could the Court conceive of any valid reason for the delay. In the amended complaint, based on the same set of factual allegations, the Texas Plaintiffs seek treble damages under the Texas statute on the ground that Abbott's "omissions and commissions" were "intentional, willful and with knowledge". (Am. Compl., ¶ 106.) This is the same standard the Plaintiffs must meet to obtain treble damages under the New York statute. See N.Y. Gen. Bus. Law § 349(h). Thus, it would be disingenuous for the Plaintiffs to assert that they learned of the facts supporting a claim for punitive damages under the NYCPA during the course of discovery.

Although the Court has the discretion to permit an untimely amendment where, as here, the Defendant will not be prejudiced, the Court finds that exercising its discretion in this instance is unwarranted. Not only have the Plaintiffs failed to provide *any* explanation for their lack of diligence and delay, but their conduct in not highlighting this substantial change to the Court or addressing it in their reply brief is of concern to the Court. Thus, the Court denies the Plaintiffs' motion to amend the complaint to the extent they seek to assert a claim for punitive damages under the NYCPA.

**D. As to the Defendant's Motion for Judgment on the Pleadings and the Plaintiffs' Motion to Amend the Complaint to Add Factual Allegations**

The Plaintiffs seek to amend the complaint to add additional factual allegations "clarifying and amplifying the false, misleading, fraudulent and deceptive business practices employed by [the Defendant]". (Pl.'s MTA Br. at 1.) The majority of these allegations relate to Abbott's knowledge of an insect infestation problem at its' Sturgis Facility from 2007 to 2010; its' negligence in maintaining its facility to prevent the insects from contaminating the products;

and its' knowledge of 238 complaints between January 2010 and August 2010 about the presence of insect parts in the Similac produced at the Sturgis Facility.

As an initial matter, as with the Plaintiffs' motion to remove the punitive damages waiver, the Plaintiffs have failed to meet their burden of showing good cause for their undue delay, and the Defendant has failed to meet its burden of showing it would be prejudiced by the proposed amendments. However, unlike the removal of the punitive damages waiver, there is no evidence of untoward conduct on the part of the Plaintiffs, and therefore the Court finds that the balance of these factors weighs in favor of permitting the amendments. See Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007) ("The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."). Thus, the Court's analysis focuses on the futility of permitting the Plaintiffs to amend the complaint.

In opposing the Plaintiffs' motion to amend, the Defendant argues that the proposed amendments are futile because the proposed second amended complaint does not cure any of the defects that warrant the dismissal of the amended complaint. In particular, the Defendant contends that the Court should dismiss the amended complaint and deny the Plaintiffs leave to file the proposed second amended complaint because: (1) the Ohio Plaintiff, as a consumer and representative of a putative class, cannot state a claim under the Ohio statutes; (2) the Texas Plaintiffs have failed to comply with the TDTPA notice requirement; (3) the Plaintiffs have failed to plead violations of the consumer protection statutes with particularity in either their amended complaint or their proposed second amended complaint; and (4) the Recall program

mooted the Plaintiffs claims under the state consumer statutes. The Court addresses each of these arguments in turn below.

**1. Whether the Ohio Statutes Bar the Plaintiffs Consumer Class Action Complaint**

The Ohio Plaintiff brings an action under the Ohio Consumer Sales Practices Act and the Ohio Deceptive Trade Practices Act, on behalf of herself and a putative Ohio subclass. The Defendant seeks dismissal of the OCSPA cause of action for failure to state a claim because the Ohio Plaintiff failed to plead that she satisfied the notice requirement that serves as a prerequisite to bringing a class action under the statute. With respect to the claims under the ODTPA, the Defendant contends that, because the Ohio Plaintiff is a consumer and not a competitor, she lacks standing and therefore the claim should be dismissed. The Court addresses the viability of the Ohio Plaintiff's claims under each statute separately.

**a. OCSPA**

The OCSPA provides that claims for violations of the OCSPA may not be brought "in a class action", unless the purported violation was either: (1) "an act or practice declared to be deceptive or unconscionable by a rule adopted [by the Attorney General] before the consumer transaction on which the action is based" or (2) "an act or practice determined by [an Ohio state court] to violate [the OCSPA] and committed after the decision containing the determination has been made available for public inspection . . . ." Ohio Rev. Code Ann. § 1345.09(B) ("section 1345.09(B)"); Volbers-Klarich v. Middletown Mgmt., Inc., 125 Ohio St. 3d 494, 501–02, 929 N.E.2d 434, 441 (Ohio 2010).

The Ohio Plaintiff does not argue that, if given the opportunity, she could meet the requisite pleading requirement of section 1345.09(B) by alleging that Abbott's conduct was previously declared deceptive or unconscionable in an administrative rule or judicial decision by

the Ohio state court. Rather, the Plaintiff argues that the Supreme Court's decision in Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., ⸺ U.S. ⸺, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010) abrogates the OCSPA's prohibition against class actions unless the notice requirements in section 1345.09(B) are met. The Court disagrees.

In Shady Grove, the Supreme Court addressed whether Rule 23 governing class actions conflicted with New York Civil Practice Law § 901(b) ("section 901(b)"), which precludes class actions seeking penalties or statutory minimum damages. The plaintiff in Shady Grove had filed a putative class action in federal court premised on diversity jurisdiction, seeking to recover unpaid statutory interest under New York Insurance Law § 5106(a). 130 S. Ct. at 1436. Under New York law, statutory interest is a penalty, and therefore pursuant to section 901(b), the plaintiff's claim would have been barred if he had brought it in New York state court. The district court dismissed the complaint for lack of subject-matter jurisdiction on the ground that section 901(b) prohibited the proposed class action. Id. at 1437. In affirming the district court, the Second Circuit held that: (1) Rule 23 and section 901(b) did not conflict and (2) that section 901(b) was "substantive" and must be applied by federal courts sitting in diversity. Id. In a 5–4 decision, the Supreme Court reversed.

Justice Scalia delivered the opinion of the Court with respect to Parts I and II-A. The Court set out the "familiar" framework for determining when to apply a federal rule that appears to conflict with a state law. First, the court must determine "whether Rule 23 answers the question in dispute." Id. If it does, then Rule 23 applies "unless it exceeds statutory authorization or Congress's rulemaking power." Id.

Applying this framework, a majority of the Court agreed that Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as

a class action" and the New York procedural statute "flatly contradict [ed]" Rule 23. Id. at 1438, 1441. The Court concluded that a conflicting state class action provision could apply in a diversity suit only if "Rule 23 is ultra vires," or outside the scope of the Rules Enabling Act, 28 U.S.C. § 2071, *et. seq.* Id. at 1437.

In Part II-B, Justice Scalia, writing on behalf of himself and three other justices ("the plurality opinion"), noted that a Federal Rule of Civil Procedure is within the Rules Enabling Act if the Rule is procedural in nature, meaning that it "governs only the manner and the means by which the litigants' rights are enforced". Id. at 1442 (internal quotation marks omitted). Justice Scalia concluded that Rule 23 "really regulate[s] procedure" and therefore falls within the Rules Enabling Act because it "merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits" and "it leaves the parties' legal rights and duties intact and the rules of decision unchanged." Id. at 1442–43 (internal quotation marks omitted). In addition, Justice Scalia stated that, for Rules Enabling Act purposes, "the substantive nature of New York's law, or its substantive purpose, *makes no difference*". Id. at 1444 (emphasis in original).

Justice Stevens concurred in the narrow holding that Rule 23 and section 901(b) conflict, but wrote a separate opinion addressing whether Rule 23 violates the Rules Enabling Act as applied to New York law. See id. at 1448 (Stevens, J. concurring in part and concurring in judgment) (the "concurring opinion"). In contrast to the plurality opinion that categorically held that Rule 23 complied with the Rules Enabling Act, Justice Stevens agreed with the four justice dissent that "that there are some state procedural rules that federal courts must apply in diversity cases because they function as a part of the State's definition of substantive rights and remedies". Id. Specifically, Justice Stevens held that "[a] federal rule . . . cannot govern a particular case in

19

which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." Id. at 1452. To avoid such a result, Justice Stevens concluded that, "[w]hen a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result." Id.

The Plaintiffs argue that the restrictions on class actions under section 1345.09(B) of the OCSPA are not applicable in federal court after Shady Grove because the restriction conflicts with Rule 23. Specifically, the Plaintiffs contend that the plurality opinion is the controlling opinion, and therefore Shady Grove stands for the proposition that any state law restricting class actions in federal court is invalid.

"'When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" United States v. Alcan Aluminum Corp., 315 F.3d 179, 189 (2d Cir. 2003) (quoting Marks v. United States, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977)) (internal quotation marks omitted). "This rule is not a carte blanche; it only applies 'in instances where one opinion can meaningfully be regarded as "narrower" than another . . . that is to say, only when that narrow opinion is the common denominator representing the position approved by at least five justices.'" In re Digital Music Antitrust Litig., --- F.Supp.2d ----, 2011 WL 2848195, at *18 (S.D.N.Y. 2011) (quoting Alcan Aluminum Corp., 315 F.3d at 189).

The Second Circuit has yet to directly address whether Justice Steven's concurrence is the controlling opinion. See Retained Realty, Inc. v. McCabe, 376 F. App'x 52, 55 (2d Cir. 2010) (noting that the decision in Shady Grove "does not set forth a single test for whether a

Federal Rule is procedural and thus consonant with the Rules Enabling Act", but that it was unnecessary to determine whether the plurality opinion or concurring opinion controlled because "[u]nder either of these tests, [they] find that Rule 54(b), like every other Federal Rule of Civil Procedure ever examined by the Supreme Court, is procedural").  However, the Court agrees with the majority of district and circuit courts that have found Justice Stevens concurring opinion was on the "narrowest grounds", and therefore is the controlling opinion.  This is because "although he found Rule 23 to conflict with § 901(b) along with the plurality, Justice Stevens' Rules Enabling Act analysis called for an analysis of the state's substantive rights and remedies that was consistent with approach of the four members of the dissent."  In re Wellbutrin XL Antitrust Litig., 756 F. Supp. 2d 670, 675 (E.D. Pa. 2010); see James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1217 (10th Cir. 2011) ("Justice Stevens concurred, and the Tenth Circuit has understood his concurrence to be the controlling opinion in Shady Grove." (citing Garman v. Campbell Cnty. Sch. Dist. No. 1, 630 F.3d 977, 983 n. 6 (10th Cir. 2010)); Godin v. Schencks, 629 F.3d 79, 84 (1st Cir. 2010) (relying on Justice Steven's concurrence in holding that "[b]ecause Section 556 is 'so intertwined with a state right or remedy that it functions to define the scope of the state-created right,' it cannot be displaced by Rule 12(b)(6) or Rule 56". (quoting Shady Grove, 130 S. Ct. at 1452 (Stevens, J., concurring)); In re Digital Music Antitrust Litig., 2011 WL 2848195, at *18; In re Packaged Ice Antitrust Litig., 779 F. Supp. 2d 642, 660 (E.D. Mich. 2011) ("Courts interpreting the Shady Grove decision ... have concluded that Justice Stevens' concurrence is the controlling opinion by which interpreting courts are bound."); Bearden v. Honeywell Int'l, Inc., No. 09-CV-1035, 2010 WL 3239285, at *10 (M.D. Tenn. Aug.16, 2010) ("Justice Stevens's concurrence is the controlling opinion")); Kline v. Mortgage Electronic Sec. Sys., No. 08-CV-408, 2010 WL 6298271, at *3 (S.D. Ohio 2010) (noting that the

district courts in Ohio faced with this precise issue "have concluded unanimously 'that Justice Stevens' concurrence . . . is the controlling opinion by which [they are] bound.'") (quoting McKinney v. Bayer Corp., 744 F. Supp. 2d 733 (N.D. Ohio 2010)); In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig., No. 08-WP-65000, 2010 WL 2756947 at *2 (N.D. Ohio July 12, 2010).

Furthermore, while the Plaintiffs do not address whether the class action restriction in the OCSPA is "intertwined" with the state substantive right, every court in Ohio to address this issue has held that section 1345.09(B) is substantive in nature and therefore not preempted by Rule 23 because it "is not a pan-substantive rule that applies to federal claims or to claims based on other states' laws. Rather, it applies only to 'a violation of Chapter 1345 of the [Ohio] Revised Code'—indicating its substantive nature." Whirlpool, 2010 WL 2756947, at *2 (quoting Ohio Rev. Code § 1345.09)); see Kline, 2010 WL 6298271, at *3–*4 (adopting the reasoning in Whirlpool that section 1345.09(B) is substantive in nature and not preempted by Rule 23); McKinney, 744 F. Supp. 2d at 746–47 (same); cf. In re Digital Music Antitrust Litig., 2011 WL 2848195, at *18 (holding that the plaintiffs could not assert a class action claim for violations of an Illinois antitrust law that includes in the text of the statute a provision "preclude[ing] private parties from asserting class actions on behalf of indirect purchasers" because "[u]nlike the New York law at issue in Shady Grove, its limitation is not contained in a generally applicable procedural rule but, rather, in the same paragraph of the same statute that creates the underlying substantive right.").

This Court finds the reasoning employed by those courts to be convincing and concludes that the Shady Grove decision does not mandate that Rule 23 invalidates the OCSPA's class action restrictions. As previously stated, the Ohio Plaintiff does not contend that she can meet

the notice requirements for maintaining a class action under section 1345.09(B). Accordingly, the Court grants the Defendant's motion and dismisses the Ohio Plaintiff's OCSPA claim.

### b. ODTPA

Pursuant to the ODTPA, "[a] person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . "[r]epresents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have", Ohio Rev. Code § 4165.02(A)(7), and/or "[r]epresents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another",  Ohio Rev. Code § 4165.02(A)(9).  The ODTPA "is substantially similar to the federal Lanham Act, and it generally regulates trademarks, unfair competition, and false advertising." Dawson v. Blockbuster, Inc., No. 86451, 2006 WL 1061769, at *3 (Ohio Ct. App. March 16, 2006).  The Defendant argues that the Court should dismiss the Ohio Plaintiff's ODTPA claim because, like the Lanham Act, the ODTPA only confers standing on competitors and not on individual consumers.

There is a split between courts in the Northern District of Ohio and the Southern District of Ohio on the question of whether a consumer can state a claim under the ODTPA.  See McKinney v. Bayer Corp., 744 F. Supp. 2d 733, 749 (N.D. Ohio 2010) (collecting cases).  On the one hand, at least one court in the Southern District of Ohio has held that "because the plaintiffs are individuals, 'and the statute by its plain language places no limitation on the type of individuals who are considered to be a 'person' and may pursue a claim,' the plaintiffs could maintain a cause of action based on alleged violation of the ODTPA". Id. at 749–50 (quoting Bower v. Int'l Business Machines, Inc., 495 F. Supp. 2d 837, 842 (S.D. Ohio 2007)).

By contrast, courts in the Northern District of Ohio have held that consumers lack standing under the ODTPA "[b]ecause the Lanham Act denies standing to consumers, and Ohio courts apply the same analysis applicable to the Lanham Act to ODTPA claims". Id. at 750 (citing Dawson, 2006 WL 1061769). Moreover, because the OCSPA and ODTPA regulate the same conduct, *compare* Ohio Rev. Code § 4165.02(A) *with* Ohio Rev. Code § 1345.02(B), "to confer standing on consumers under the DTPA would render the CSPA superfluous". Robins v. Global Fitness Holdings, LLC, No. 11-CV-1373, 2012 WL 163031, at *15 (N.D. Ohio 2012); cf. Blankenship v. CFMOTO Powersports, Inc., 161 Ohio Misc.2d 5, 944 N.E.2d 769 (Ohio Com. Pl. 2011). After analyzing the conflict in great detail, the court in McKinney certified the question to the Ohio Supreme Court. However, before the Ohio Supreme Court could reach the issue, the plaintiff in McKinney dismissed the claim. Nevertheless, the Court finds that the analysis regarding the similarities between the ODTPA and the Lanham Act identified in McKinney, Robins, and Blankenship to be compelling. Furthermore, the Court agrees with those courts that have found that reading the ODTPA to permit consumer claims would render the OCSPA superfluous. Thus, the Court finds that the ODTPA does not confer a private right of action on consumers, and therefore grants the Defendant's motion dismissing the Ohio Plaintiff's ODTPA claim.

Because the Court finds that the Ohio Plaintiff cannot state a claim under either statute, the Court dismisses the claims with prejudice. As a result, the Court will not address whether the pleadings otherwise satisfy the elements of an OCSPA or ODTPA claim.

**2. Whether the Texas Plaintiffs Have Satisfied the TDTPA Notice Requirement**

The Defendant contends that the Court should hold the Texas Plaintiffs' TDTPA claims in abeyance because they failed to comply with the notice requirements set forth in Tex. Bus. & Com. Code § 17.505 ("section 17.505"). Section 17.505 states in relevant part:

> (a) As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant. During the 60-day period a written request to inspect, in a reasonable manner and at a reasonable time and place, the goods that are the subject of the consumer's action or claim may be presented to the consumer.

Tex. Bus. & Com. Code § 17.505(a). The purpose of the notice requirement is "to afford the opportunity for presuit negotiations and settlement in avoidance of lengthy and costly litigation". Hines v. Hash, 843 S.W.2d 464, 465–66 (Tex. 1992) (internal quotation marks and citation omitted). The notice requirement of the TDTPA is mandatory. Id. at 467. In addition, the plaintiff has the burden to plead and prove compliance with this provision. Keith v. Stoelting, Inc., 915 F.2d 996, 998 (5th Cir. 1990). Nevertheless, the penalty for failure to comply with the notice requirement is abatement of the action for 60-days, not dismissal, because "abatement of the action for the statutory notice period is more consistent with the purpose of notice than dismissal". Hines, 843 S.W.2d at 468–69.

When a plaintiff fails to comply with the notice requirement, a defendant has up to 30 days after the date it files the answer to file a plea in abatement, which, if granted, holds the case in abeyance for 60-days to allow the parties to engage in the settlement discussions anticipated by the statute. Tex. Bus. & Com. Code § 17.505(c); Hines, 842 S.W. at 469 ("To be timely, the

request for an abatement must be made while the purpose of notice—settlement and avoidance of litigation expense—remains viable. Thus, defendant must request an abatement with the filing of an answer or very soon thereafter.").

The Texas Plaintiffs do not dispute that they failed to provide the requisite notice either prior to commencing this action, or anytime thereafter. Rather, the Texas Plaintiffs submit that Abbott has waived its right to object to the lack of notice because it did not make a timely request for an abatement. The Court disagrees. The Defendant filed its answer on February 14, 2011, in which it specifically raised as an affirmative defense that the TDTPA claim was "barred by failure to plead and provide proper and timely notice, as required by [the statute]". (Answer § 126.) Twenty-nine days later, the Defendant filed the instant motion seeking the dismissal of the complaint, and again raising the objection that the Texas Plaintiffs have yet to comply with the notice requirement. Courts consider raising the notice requirement in a motion to dismiss "to be a timely objection to [a plaintiff's] failure to comply with the notice requirement". Ramirez v. Am. Home Prods., No. C.A. B-03-155, 2005 WL 2277518, at *10 (S.D. Tex. Sept. 16, 2005). Thus, the Court finds that the Defendant's request for an abatement was timely.

The Court therefore orders the Texas Plaintiffs' TDTPA claim abated for sixty days after the Texas Plaintiffs serve written notice on Abbott. The Texas Plaintiffs must provide notice within twenty days of the date this Order issues, and notify the Court when they have done so. If the Texas Plaintiffs fail to provide timely notice, the Court will dismiss their claim.

**3. Whether the Plaintiffs State a Claim Under the New York, New Hampshire and Texas Consumer Protection Statutes**

The Plaintiffs allege that the Defendant made affirmative misrepresentations and omissions with regard to the safety of Similac in violation of the consumer protection statutes. As previously stated, because the Court dismisses the claims under the Ohio statutes with

26

prejudice on separate grounds, it will not address whether the Ohio Plaintiff plausibly stated a claim for a deceptive act or practice under the statutes. By contrast, because the Court is not dismissing the Texas Plaintiffs' claim for failure to comply with the notice requirement, but rather holding it in abeyance, the Court deems it prudent to address whether the Texas Plaintiffs' plausibly state a claim under the statute. Thus, this section addresses the sufficiency of the Plaintiffs claims under the New Hampshire, New York, and Texas statutes for the purposes of the Defendant's motion for judgment on the pleadings, and the futility analysis of the Plaintiffs' motion to amend, solely with respect to the factual allegations regarding the alleged deceptive acts and practices.

The New Hampshire Consumer Protection Act prohibits the use of "any unfair or deceptive act or practice in the conduct of any trade or commerce." N.H. Rev. Stat. Ann. § 358–A:2. The act provides a non-exhaustive list of prohibited practices, including prohibitions against: (1) "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ", N.H. Rev. Stat. Ann. § 358-A:2.V.; and (2) "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another", N.H. Rev. Stat. Ann. § 358-A:2.VII.

In addition, although not include in the enumerated list of prohibited practices, courts have found that "the failure to warn of a defective or dangerous condition can, under appropriate circumstances, constitute an unfair or deceptive trade practice under New Hampshire's Consumer Protection Act." Herne v. Cooper Indus., Inc., No. 04-CV-202, 2005 WL 2671540, at *4 (D.N.H. 2005). Moreover, regardless of whether it is among the enumerated list of prohibited practices, "in order for conduct to run afoul of the statute, it 'must attain a level of rascality that

27

would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.'" Hobin v. Coldwell Banker Residential Affiliates, Inc., 144 N.H. 626, 635, 744 A.2d 1134, 1141 (N.H. 2000) (quoting Barrows v. Boles, 141 N.H. 382, 390, 687 A.2d 979, 986 (N.H. 1996)).

With respect to damages, the NHCPA provides that "[i]f the court finds for the plaintiff, recovery shall be in the amount of actual damages or $1,000, whichever is greater," and the plaintiff " shall be awarded the costs of the suit and reasonable attorney's fees, as determined by the court." N.H. Rev. Stat. Ann. § 358-A:10. Furthermore, the NHCPA provides that a court may award "as much as 3 times, but not less than 2 times" the amount of damages if it finds the violation was "willful or knowing". Id.

The New York Consumer Protection Act codified at Section 349 of the New York General Business Law declares that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York are unlawful. N.Y. Gen. Bus. § 349(a). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (N.Y.1995)); Stutman v. Chemical Bank, 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000).

Furthermore, a consumer can maintain a cause of action under the NYCPA based on omissions "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." Oswego, 85 N.Y.2d at 26, 623 N.Y.S.2d at 533, 647 N.E.2d at 745. With respect to damages, "[c]itizens can enjoin an unlawful business practice, recover actual damages (or $50, whichever is greater) and obtain attorney's fees. In

addition, if a defendant knowingly or willfully engages in a deceptive practice, the court may, in

its discretion, award treble damages up to a maximum of $1,000". <u>Stutman</u>, 95 N.Y.2d at 29,

709 N.Y.S.2d 895–96, 731 N.E.2d at 611–12 (citing General Business Law § 349(h)).

     Finally, to establish a violation of the Texas Deceptive Trade Practices Act, plaintiffs

must show that: (1) they fit the statutory definition of "consumer;" (2) the defendant engaged in

one of the false, misleading, or deceptive acts enumerated in the statute; and (3) these acts

constituted a "producing cause" of the plaintiffs' damages. <u>Doe v. Boys Clubs of Greater Dallas,</u>

<u>Inc.</u>, 907 S.W.2d 472, 478 (Tex. 1995). Among the affirmative statements prohibited by the

statute are representations that products have "characteristics, ingredients, uses, benefits, or

quantities which they do not have", Tex. Bus. & Com. Code § 1746(b)(5), and that products "are

of a particular standard, quality, or grade, or that goods are of a particular style or model, if they

are of another", Tex. Bus & Com. Code Ann. §1746(b)(7). With respect to omissions, the

TDTPA explicitly prohibits "failing to disclose information concerning goods or services which

was known at the time of the transaction if such failure to disclose such information was

intended to induce the consumer into a transaction into which the consumer would not have

entered had the information been disclosed". Tex. Bus. & Com. Code. § 1746(b)(24).

     Violations of the TDTPA permit a plaintiff to recover "actual damages" under either the

"out of pocket" rule or the "benefit of the bargain" rule, whichever gives the consumer the

greater recovery. <u>Leyendecker & Assocs., Inc. v. Wechter</u>, 683 S.W.2d 369, 373 (Tex. 1984);

<u>W.O. Bankston Nissan, Inc. v. Walters</u>, 754 S.W.2d 127, 128 (Tex. 1988) (defining out-of-

pocket and benefit-of-the-bargain damages). In addition, the statute permits additional damages

for "mental anguish" up to the three times the amount of actual damages for TDTPA violations

that were committed "knowingly" or "intentionally". Tex. Bus. & Com. Code § 17.50(b)(1).

In its motion, the Defendant does not separately address the sufficiency of the Plaintiffs'

claims under each state statute. Rather, the Defendant mainly argues that all of the consumer

protection statute claims should be dismissed because: (1) the statements and omissions

underlying the claims are not plead with the particularity required by Federal Rule of Civil

Procedure 9(b) ("Rule 9(b)"); and (2) even under Federal Rule of Civil Procedure 8(a) ("Rule

8(a)"), the Plaintiffs fail to state a claim under the state statutes because the alleged

misrepresentations are either too vague to state a claim or constitute non-actionable puffery or

opinion.

### a. As to the Applicable Pleading Standard

The parties dispute whether the Court should analyze the sufficiency of the Plaintiffs'

consumer protection statute claims under the liberal pleading standard of Rule 8(a) or the

heightened pleading requirements of Rule 9(b).

In the Second Circuit, the controlling case on the pleading standard governing consumer

protection statutes is Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005). In Pelman, the

plaintiffs alleged that McDonalds engaged in deceptive practices by, among other acts,

misrepresenting the nutritional quality of its food through a combination of advertisements and

failing to disclose that certain of its foods were substantially less healthy than advertised. The

district court dismissed the plaintiffs' NYCPA claim on the grounds that the plaintiffs failed to

plead facts supporting a causal connection between their consumption of McDonald's food and

their alleged injuries, and because the plaintiffs' "allegations of a generalized campaign to create

a false impression were vague and conclusory". 396 F.3d at 511, 512 n.5.

The Second Circuit vacated the district court decision, holding that "because § 349

extends well beyond common-law fraud to cover a broad range of deceptive practices, and

because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of Rule 8(a)". <u>Id.</u> at 511 (internal citations omitted).  With respect to the "vague and conclusory allegations" regarding the generalized campaign, the court held that "the cure for such deficiencies, in a claim not required to be plead with particularity, is a motion for a more definite statement under Rule 12(e), rather than dismissal". <u>Id.</u> at 512 n.5 (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514–15, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)).

The Defendant contends that the Court should limit <u>Pelman</u> to its facts because it related to an "advertising scheme" as opposed to "literally false statements of material fact with scienter intending to induce reliance", and asserts that the Second Circuit's decision in <u>Rombach v. Chang</u>, 355 F.3d 164 (2d Cir. 2004) should control.  (Def.'s MTD Br. at 8–9.)  In <u>Rombach</u>, the Second Circuit held that whether a plaintiff's claims "sound[s] in negligence or in fraud" for the purposes of applying Rule 9(b), depends not on whether the allegations are "styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action" but rather whether the "wording and imputations of the complaint are classically associated with fraud".  355 F.3d at 171–72.  The Defendant argues that the decision in <u>Rombach</u> cannot be squared with the decision in <u>Pelman</u>, which distinguished NYCPA and fraud claims in part because NYCPA claims do not require a showing of reliance and scienter.  Based on <u>Rombach</u> and a narrow reading of <u>Pelman</u>, the Defendant contends that because the Plaintiffs allege the type of intentional conduct that "sounds in fraud", and because they allege reliance on particular advertisements rather than a general "advertising scheme", their claims should be held to the heightened pleading standard of Rule 9(b).

However, the Defendant's attempt to limit Pelman to its facts cannot be credited in light of the Second Circuit's decision in City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425 (2d Cir. 2008), which cited Pelman for the proposition that Rule 8(a) was applicable to two sets of NYCPA claims. The first NYCPA claim alleged that "defendants intentionally failed to inform their customers that they must pay taxes and omitted the amount of taxes owed to the City and the State from the advertised prices". 541 F.3d at 455. Despite the fact that this allegation was pled in terms of "intentional" conduct, the Second Circuit did not apply Rule 9(b). The second NYCPA claim alleged "that defendants represented to customers that the cigarettes are "tax free," that their customers do not have to pay taxes, and/or that defendants did not have to file Jenkins Act reports". Id. at 456. Unlike Pelman, this allegation was premised not on an "advertising scheme", but allegedly false statements about the defendant's "tax-free" status. However, the Second Circuit still applied Rule 8(a).

Read together, Pelman and Smoke-Spirits.com establish a categorical rule that NYCPA claims, regardless of whether they "sound in fraud", or are premised on specific misrepresentations rather than an "advertising scheme", are not subject to the heightened pleading requirement of Rule 9(b). See Welch v. TD Ameritrade Holding Corp., No. 07-CV-6904, 2009 WL 2356131, at *24 n.13 (S.D.N.Y. July 27, 2009) (following Rombach in ruling that a plaintiff's unjust enrichment claim for a fraudulent securities scheme was subject to Rule 9(b), but that the section 349 claim premised on the same allegations was subject to Rule 8(a) because "the Second Circuit has held that, as a categorical matter, claims under § 349 are only required to meet the requirements of Rule 8(a)") (citing Smokes-Spirits.Com, 541 F.3d at 455); Ng v. HSBC Mortg. Corp., No. 07-CV-5434, 2010 WL 889256, at *14 (E.D.N.Y. March 10, 2010) ("Deceptive conduct that does not rise to the level of actionable fraud, may nevertheless

form the basis of a claim under New York's Deceptive Practices Act, which was created to protect consumers from conduct that might not be fraudulent as a matter of law, and also relaxes the heightened standards required for a fraud claim.").

As to the non-New York statutes, whereas the Plaintiffs fail to address the applicable pleading standard to the NHCPA and TDTPA claims, the Defendant presumes that, because federal district courts in New Hampshire and Texas apply a heightened pleading standard to the claims under their state statutes, this Court should as well. Contrary to the Defendant's assumption, this Court is not bound by the pleading standard applied by district courts in other states to that state's law.

Although the substantive requirements of the NHCPA and TDTPA are governed by the law of their respective states of origin, any pleading requirements are governed by federal law, which controls procedural matters in diversity cases. "Whether plaintiffs' claims must comply with the pleading burdens imposed by Fed. R. Civ. P. 9(b) by virtue of the complaint 'sounding in fraud' or being 'grounded in fraud' is an issue of federal law, not state law." Ackerman v. Coca-Cola Co., No. 09-CV-395, 2010 WL 2925955, at *18 n. 31 (E.D.N.Y. July 21, 2010). Here, the Court is bound by the law of Second Circuit. See Northwestern Mut. Life Ins. Co. v. Banc of America Securities LLC, 254 F. Supp. 2d 390, 396 (S.D.N.Y. 2003) ("[B]ecause Rule 9(b) is a rule promulgated pursuant to a federal statute, this Court is required to follow the precedent of the Court of Appeals for the Second Circuit with respect to the interpretation and application of Rule 9(b)."); see also Desiano v. Warner-Lambert & Co., 467 F.3d 85, 91 (2d Cir. 2006). Thus, the relevant issue is whether the Second Circuit would apply Rule 8(a) to the non-New York statutes because, like the NYCPA, they are either distinguishable in form or purpose from fraud claims. See Keegan v. Am. Honda Motor Co., Inc., --- F. Supp. 2d ----, 2012 WL

75443, at *21–*22 (C.D. Cal. 2012) (acknowledging that although the Second Circuit under Pelman would apply Rule 8(a) to the plaintiffs' NYCPA claim, it was bound by Ninth Circuit precedent to apply Rule 9(b) to the NYCPA claims); Petri v. Gatlin, 997 F. Supp. 956, 973 (N.D. Ill. 1997) ("Because the DTPA is substantially similar to the ICFA, we assume *arguendo* that Rule 9(b) applies to statutory fraud claims under Texas law as well.").

Similar to the NYCPA, the New Hampshire statute also does not include the elements of reliance or scienter. Although the Texas statute requires a plaintiff to prove reliance in order to prevail on a TDTPA claim, Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 (Tex. 2002) (identifying reliance as an element of plaintiffs' TDTPA claims), a plaintiff is not required to show that the defendant acted "knowingly or intentionally". Miller v. Keyser, 90 S.W.3d 712, 716 (Tex. 2002). In addition, just as the New York Court of Appeals has held that "[i]n contrast to common-law fraud, [the NYCPA] is a creature of statute based on broad consumer-protection concerns", Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 343, 704 N.Y.S.2d 177, 182, 725 N.E.2d 598, 603 (N.Y. 1999), the Texas Supreme Court has explicitly noted that "[a] primary purpose of the enactment of the DTPA was to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit." Smith v. Baldwin, 611 S.W.2d 611 (Tex. 1980); see also Miller, 90 S.W.3d at 716; Eagle Properties, Ltd. v. Scharbauer, 807 S.W.2d 714 (Tex. 1990). Thus, in light of the similarities between the NYCPA and the analogous New Hampshire and Texas statutes, the Court finds that the applicable pleading standard to claims under all three statutes is the notice pleading requirements of Rule 8(a).

**b. Misrepresentations and Omissions**

The Plaintiffs allege that Abbott violated the NHDPA, NYCPA, and TDTPA by misleading consumers as to the safety of Similac through the following affirmative statements: (1) Similac was "safe for the consumption by infants"; (2) Abbott was "dedicated to the highest standards of manufacturing and marketing – and to complying with all applicable laws and regulations in the countries where [they] do business"; (3) Similac "provid[es] babies with excellent nutrition for growth and development and has been clinically proven to aid brain, bone and immune system development"; and (4) Abbott is "committed to conducting research to ensure that formula-fed infants receive the highest quality products to meet their nutritional needs.". Abbott contends that these statements are either objectively non-misleading, or amount to mere puffery or opinion and therefore are not actionable under the consumer protection statutes.

"A material claim is one that 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" Bildstein v. MasterCard Int'l Inc., 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (quoting Novartis Corp. v. F.T.C., 223 F.3d 783, 787 (D.C. Cir. 2000)). The relevant inquiry is not whether the statement is literally false. Am. Home Prods. Corp. v. Johnson & Johnson, 577 F.2d 160, 165 (2d Cir. 1978). Rather, "[w]hat is important in determining whether a statement is misleading is the over-all impression it tends to create on the public." Country Tweeds, Inc. v. F. T. C., 326 F.2d 144, 148 (2d Cir. 1964); Beer v. Bennett, 160 N.H. 166, 170, 993 A.2d 765, 768 (N.H. 2010) ("Moreover, even if the individual representations could be read as literally true, the advertisement could still violate the CPA if it created an overall misleading impression." ).

35

However, statements that are vague or "either mere puffery or hyperbole" such that "a reasonable consumer would not view [them] as significantly changing the general gist of available information . . . are not material, even if they were misleading." In re Ford Motor Co. Securities Litig., Class Action, 381 F.3d 563, 570 (6th Cir. 2004). "Simply stated, puffing is sales talk that the buyer should discount when making a transaction because no reasonable person under the circumstances would rely on the statement when contemplating a purchase." Tylka v. Gerber Prods. Co., No. 96-CV-1647, 1999 WL 495126, at *5 (N.D. Ill. July 1, 1999).

If an alleged misrepresentation would not deceive a reasonable person because it is vague or amounts to mere puffery or opinion, then a claim under the consumer protection statutes *may* be dismissed, as a matter of law, on a motion to dismiss. Lacoff v. Buena Vista Publishing, Inc., 183 Misc.2d 600, 705 N.Y.S.2d 183, 191 (N.Y. Sup. Ct. 2000) (dismissing claims under sections 349 and 350 because certain language "is not actionable, as it is simply puffery or opinion"); Helena Chemical Co. v. Wilkins, 47 S.W.3d 486, 502 (Tex. 2001) ("The DTPA does not mention "puffing" as a defense. However, this Court has recognized that "mere puffing" statements are not actionable under sections 17.46(b)(5) or 17.46(b)(7).") (citing Pennington v. Singleton, 606 S.W.2d 682, 687 (Tex. 1980)); Private Jet Servs. Group, Inc. v. Sky King, Inc., No. 05-CV-98, 2006 WL 2864057, at *5 (D.N.H. 2006) ("Mere puffery that does not represent that the company adheres to particular standards or requirements is not actionable under [the NHCPA]. Further, in general only factual misstatements, not statements of opinion, constitute actionable misrepresentations.") (internal citations omitted).

The Court finds that the majority of the statements cited by the Plaintiffs in support of their claims either have nothing to do with the safety of Similac, or are too vague to mislead a reasonable consumer and therefore are immaterial. Specifically, the statements that Similac

"provid[es] babies with excellent nutrition for growth and development and has been clinically

proven to aid brain, bone and immune system development" and that Abbott is "'committed to

conducting research to ensure that formula-fed infants receive the highest quality products to

meet their nutritional needs'" are not material, and therefore not actionable, because they have no

bearing on the safety of the product for the ingestion by infants and "[a]n infant formula

containing beetles could nonetheless improve immunity, bone strength, and brains and eyes, and

provide important nutrition". Vavak v. Abbott Labs., Inc., SACV 10–1995 JVS, slip op. at 6–7

(C.D.Cal. March, 7, 2011); accord Bland v. Abbott Labs., Inc., No. 11-CV-430, 2012 WL 32577,

at *2 (W.D. Ky Jan. 6, 2012); Gray v. Abbott Labs., Inc., No. 10-CV-6377, 2011 WL 3022274

(N.D. Ill. July 22, 2011); Jasper v. Abbott Labs., Inc., No. 11-CV-229, 2011 WL 2672519 (N.D.

Ill. July 8, 2011).

   Furthermore, the statement that Abbott is "dedicated to the highest standards of

manufacturing and marketing – and to complying with all applicable laws and regulations in the

countries where [they] do business" is not actionable under the consumer protection statutes.

This aspirational statement is simply too vague for a reasonable consumer to rely on it in any

material way in making a decision to purchase the Defendant's products.  General statements

about compliance with safety and quality standards are non-actionable "puffery" where, as here,

they fail to identify specific requirements or standards.  See Private Jet Servs. Group, Inc., 2006

WL 2864057, at *5 (holding that statements about the high quality of the defendant's services

were "mere puffery" and therefore not actionable under the NHCPA because "they do not

provide any implied or express warranties as to quality or any representations about compliance

with specific requirements or standards"); Cleveland Mack Sales, Inc. v. Foshee, No. 14-CV-59,

2001 WL 1013393, at *4 (Tex. Ct. App.  2001) ("Imprecise or vague statements are generally

considered puffing, and are not actionable under the DTPA, while statements of material fact are actionable.") (citing Douglas v. Delp, 987 S.W.2d 879, 886 (Tex. 1999)); Tylka, 1999 WL 495126, at *8 ("'The people and resources of the Gerber Products Company are dedicated to assuring that the company is the world leader in, and advocate for, infant nutrition, care and development,' simply presents no basis for consumer deception.").

Contrary to the Plaintiffs' contention, a statement that Abbot is "dedicated . . . to complying with all applicable laws and regulations" is distinguishable from false or even literally true statements that mislead a consumer to believe that a product is FDA-approved. Those allegations involve the "peculiar form that marketing has taken as having a specialized, implicit meaning in the eyes of the consumer [ ] that the drug is FDA-approved." Mutual Pharm. Co. v. Ivax Pharms., Inc., 459 F. Supp. 2d 925, 941 (C.D. Cal. 2006) (holding that plaintiffs presented viable claims that defendant had falsely implied that its drugs were FDA approved by placing them on comparative clinical databases). For example, in In re Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation, 701 F. Supp. 2d 356 (E.D.N.Y. 2010), the case relied upon by the Plaintiffs for this proposition, the court found that the plaintiffs stated a claim under a number of state consumer protection statutes based on the plaintiffs' allegation that Bayer falsely implied that its drug was FDA-approved "by employing valid FDA-approved statements about the virtues of the component parts of the combination products". Id. at 374.

By contrast, in the statement cited by the Plaintiffs, the Defendant vaguely references a dedication to complying with unspecified standards and all of the laws and regulations in the countries where it operates. As the Plaintiffs themselves allege in the amended and proposed second amended complaints, Abbott "markets its products in more than 130 countries". (Am.

Compl., ¶ 20; PSAC, ¶ 20.)  A broadly stated goal to comply with the laws of 130 countries is puffery and therefore cannot materially mislead a reasonable consumer.  See Bernstein v. Extendicare Health Servs., Inc., 607 F. Supp. 2d 1027, 1032 (D. Minn. 2009) (holding that "[s]tatements that a nursing home will comply with or exceed 'applicable laws,' or that it has established 'rigorous standards,' are similar to statements that services provided will be 'high quality.'" and therefore constitute non-actionable puffery under the Minnesota Deceptive Trade Practices Act).

Because the Court finds that the statement that Abbott is "dedicated to the highest standards of manufacturing and marketing – and to complying with all applicable laws and regulations in the countries where [they] do business" is not actionable, it is unnecessary to address the Defendant's contention that the Plaintiffs reliance on this statement is preempted by the Food Drug and Cosmetics Act ("FDCA").  Neither must the Court resolve at this stage what evidence regarding Abbott's compliance with FDA regulations may or may not ultimately be admissible to support the Plaintiffs' claims.

However, the Court finds that the allegation that the "product packaging describes Similac as being a formula approved and used most by hospitals, because it is safe for the consumption by infants" (Am. Compl., ¶ 25) plausibly supports a claim based on affirmative misrepresentations under the consumer protection statutes.  Moreover, by identifying the alleged misrepresentation as being located on the "product packaging" and alleging that they "relied" on this statement in purchasing and paying a premium price for the contaminated formula, the Plaintiffs have satisfied the requisite causal connection between the deceptive act and their injuries to sustain a claim under all three statutes, as well as the reliance element of the TDTPA.

Although the Plaintiffs have not quoted a specific advertisement, this is not required under Rule 8(a). This case is distinguishable from the Court's decision in <u>Woods v. Maytag</u> ("<u>Maytag I</u>"), No. 10-CV-599, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010), where the Court dismissed a claim under the NYCPA based on alleged misrepresentations, which, unlike the allegations in the instant case, were plead on "information and belief". Contrary to the Defendant's characterization, the Court dismissed the plaintiff's NYCPA claim premised on *omissions*, not affirmative misrepresentations, because the plaintiff "vaguely allege[d] that Defendants 'knew' of the alleged defect". 2010 WL 4314313, at * 16. As discussed below, because a failure to disclose for the purposes of stating a claim under the NYCPA only arises when a defendant "exclusively possess information that a reasonable consumer would want to know and could not discover without difficulty", a plaintiff cannot plead that an omission constituted a deceptive practice based on conclusory allegations of knowledge. <u>Id.</u> Indeed, in a later opinion, the Court denied Maytag's motion to dismiss the plaintiff's NYCPA claim based on omissions in his amended complaint because the plaintiff alleged facts plausibly alleging that Maytag had knowledge of product defect and engaged in a "deceptive act or practice" by failing to warn consumers. <u>See Woods v. Maytag</u> ("<u>Maytag II</u>"), 807 F. Supp. 2d 112, 129 (E.D.N.Y. 2011).

Furthermore, while certain statements that a product is "safe" *may* constitute puffery, it is an actionable deceptive practice to mislead consumers into believing a product is safe for a particular use when it is not. <u>See In re Bayer Corp.</u>, 701 F. Supp. 2d at 375 (holding that the plaintiffs allegations that "Bayer misrepresented the safety and effectiveness of the combination products" was a "traditional claim of consumer misrepresentation"). However, because the Plaintiffs have not identified a specific advertisement for the Court to assess whether the

language used would mislead a reasonable customer, the Court cannot find as a matter of law that advertising that a product is "approved and used most by hospitals, because it is safe for the consumption by infants" is non-actionable puffery.  See, e.g., Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1125–26 (N.D. Cal. 2010) ("The insistence that a product with (allegedly) dangerous additives is nonetheless 'wholesome,' . . ., arguably *could* mislead a reasonable consumer.  Accordingly, at this juncture, the term 'wholesome' cannot be deemed to constitute non-actionable puffery."); cf. Cecere v. Loon Mt. Rec. Corp., 155 N.H. 289, 297–98 (2007) (granting summary judgment on CPA claim to defendants where plaintiff "alleged that the defendants violated the CPA by falsely advertising that the terrain park and specifically its jumps were 'state of the art' and 'safe for the use by patrons for the specific purpose of snowboarding'" but produced "no advertising by the defendants representing that the terrain park was 'state of the art' or 'safe for ... snowboarding'"); Sergeant Oil & Gas Co., Inc. v. Nat'l Maintenance & Repair, Inc., 861 F. Supp. 1351, 1362 (S.D. Tex. 1994) ("Whether a statement constitutes merely an expression of opinion or "puffing," or an actionable misrepresentation depends on several factors, including the specificity of the statement and the comparative levels of the buyer's and seller's knowledge concerning the subject matter of the transaction.") (citations omitted).

Finally, the Court also finds that the Plaintiffs have stated claims under the consumer protection statutes based on omissions.  The Plaintiffs allege that Abbott engaged in a deceptive practice by omission, because Abbott was aware that the Similac was contaminated with insect parts and therefore not "safe for ingestion by infants", and failed to disclose that information to consumers.

All three statutes require either actual or constructive knowledge to state a claim based on omissions.  See Maytag I, 2010 WL 4314313, at * 15 ("As with fraud claims, when a defendant

exclusively possesses information that a reasonable consumer would want to know and could not

discover without difficulty, failure to disclose can constitute a deceptive or misleading practice.")

(citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 27,

623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y. 1995)); Doe v. Boys Clubs of Greater Dallas, Inc., 907

S.W.2d 472, 479 (Tex. 1995) ("To be actionable under the DTPA, a failure to disclose material

information necessarily requires that the defendant have *known* the information and have failed

to bring it to the plaintiff's attention.") (emphasis in original); Beer v. Bennett, 160 N.H. 166,

170, 993 A.2d 765, 768–69 (N.H. 2010) (holding that although the NHCPA does not require

that a misrepresentation or omission be knowing or intentional in order to recover the minimum

statutory damages, "the statute's plain language 'indicates that some element of knowledge on

the part of the defendant is required'". ) (quoting Kelton v. Hollis Ranch, 155 N.H. 666, 668, 927

A.2d 1243 (N.H. 2007)).

In the amended complaint, the Plaintiffs stated in conclusory terms that Abbott "had

actual and/or constructive notice that Similac contained contaminants, including insect/bettle

particles and larvae, when placing these products into the stream of commerce". (Am. Compl., ¶

45.) Absent from the amended complaint were facts that, if true, would render this contention

plausible. However, in the proposed second amended complaint, the Plaintiffs allege additional

facts that, when viewed in the light most favorable to the Plaintiffs, plausibly allege that the

Defendant had "actual or constructive" knowledge of the contamination "when placing [Similac]

into the stream of commerce". In particular, the Plaintiff alleges that: (1) Abbott was aware of a

beetle infestation in the Sturgis Facility that became progressively worse from January 2007 until

2010 based on reports provided by its exterminator, (PSAC, ¶¶ 53–58, 60); (2) Abbott was aware

that the equipment in the facility responsible for preventing insects from contaminating the

product was defective and poorly maintained, (PSAC, ¶¶ 41–48, 61); and (3) Between January

2010 and August 2010, Abbott "received 238 infestation complaints for product manufactured at

the Sturgis, Michigan facility" (PSAC, ¶ 52).

Whether Abbott's failure to disclose the existence of the customer complaints about

insect parts in its product constitutes a material omission "depends upon the volume and

accuracy of those complaints". St. Patrick's Home for Aged and Infirm v. Laticrete Int'l, Inc.,

264 A.D.2d 652, 655–56, 696 N.Y.S.2d 117, 122 (1st Dep't 1999) ("Non-disclosure of a single,

unsubstantiated allegation of product failure is not sufficient. On the other hand, concealment of

scores of complaints about the defective nature of a product would clearly approach fraud.").

Notably, the mere existence of product complaints does not in and of itself prove that the product

was unsafe. Whether these complaints provided actual knowledge of the product contamination,

and whether these complaints provided actual knowledge that contamination with beetle parts

was "unsafe", are factual issues that the Court does not need to decide on a motion to dismiss.

Indeed, at this stage in the litigation, what the Plaintiffs can "prove" is irrelevant. The parties

submitted declarations and documentary evidence regarding these complaints in conjunction

with their supplemental briefing on mootness. However, because these documents are not

incorporated by reference in the complaint, the Court cannot consider them on a motion to

dismiss without converting the motion into one for summary judgment, which the Court declines

to do.

Here, the Plaintiffs have alleged that: (1) Abbott knew about the presence of insect parts

in the formula manufactured at the Sturgis Facility from 238 consumer complaints; (2) Abbott

intentionally withheld this information to induce customers to purchase the formula; and (3) the

Plaintiffs would not have purchased Similac and/or paid the premium price for Similac had they

43

known of the contamination. Thus, the Plaintiffs have plausibly stated a claim under all three statutes based on the Defendant's omissions. See Szymczak v. Nissan North America, Inc., No. 10-CV-7493, 2011 WL 7095432, at *16 (S.D.N.Y. 2011). ("Here, plaintiffs' allegations include sufficient detail and a plausible narrative for how defendants knew of the radiator defect. At this stage, the Court can only assume the narrative is true. Therefore, the Court will not dismiss the Section 349 claims as to plaintiffs Szymczak, Lopez, Greathouse, and Jackson . . . but will leave those plaintiffs to their proof."); In re Sony Vaio Computer Notebook Trackpad Litig., No. 09-Cv-2109, 2010 WL 4262191, at *5 (S.D. Cal. 2010) (holding that the plaintiffs plausibly alleged claims under the California, New Jersey, and Florida consumer protection statutes based on omissions because the plaintiffs "alleged that Sony knew about a material fact, the defective trackpad, from numerous consumer complaints, but concealed that information from Plaintiffs [and] Plaintiffs further allege that if they had known about the defect, Plaintiffs never would have purchased the notebooks at the prices they paid."); Doll v. Ford Motor Co., --- F.Supp.2d ----, 2011 WL 3820324, at *16 (D. Md. 2011) ("Plaintiffs have adequately pled a claim under the New York Deceptive Trade Practices Act. In the Amended Complaint, Plaintiffs contend that Ford misled consumers by withholding material information regarding the defective torque converter, and, as a result, consumers were harmed by high repair and replacement costs. This Court finds that Ford's alleged omissions are consumer orientated, materially misleading, and are the source of the Plaintiff's injuries.").

Accepting the allegations set forth in the amend complaint and proposed second amended complaint as true, and viewing them in the light most favorable to Plaintiffs, they have stated viable claims under the NHCPA, NYCPA, and TDTPA based on affirmative misrepresentations and omissions. Accordingly, the Defendant's motion for judgment on the

pleadings on this ground is denied, and the Plaintiffs' motion to amend the complaint to add the

additional factual allegations is granted. The amendment is not futile.

### 4. Whether the Recall Program Moots the Plaintiffs Consumer Protection Act Claims

On January 20, 2012, the Court directed the parties to submit supplemental briefing on

whether the voluntary recall mooted the Plaintiffs' claims, an argument raised by the Defendant

in opposition to the motion to amend. As the Court noted in its supplemental briefing order, a

number of courts also handling cases against Abbott based on the contaminated Similac subject

to the Recall had held that, because Abbott had offered to reimburse consumers through the

Recall, any claims by plaintiffs seeking damages for economic loss or restitution were moot.

Most comparable to the instant case was Jovine v. Abbott Laboratories, Inc., 795 F. Supp.

2d 1331 (S.D. Fla. 2011), when the plaintiff sought to recover unspecified damages for Abbott's

violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Although the

court found that the plaintiff adequately alleged an unfair or deceptive practice under the statute,

the court dismissed the claim on the ground that the plaintiff "[could not] plausibly allege that he

suffered damages insofar as the amount he paid for the product, for he alleges that Defendants

issued a voluntary recall". Id. at 13344. The court further noted that, "[t]o the extent Plaintiff

predicates his FDUTPA damages on injury he suffered beyond the purchase price of the

product", those damages were barred by the statutory limitation on "actual damages". Id.

Here, the Plaintiffs are similarly vague with regard to the damages they seek. Although

the Plaintiffs allege that their children suffered personal injuries, the Plaintiffs do not expressly

seek damages on this ground. Furthermore, while in their supplemental briefing the Plaintiffs

assert that the New York Plaintiff incurred medical costs associated with her child's condition

allegedly caused by the contaminated formula, this allegation is not included in the amended or

proposed second amended complaints. Nevertheless, the Court finds that, even assuming the

Plaintiffs are only seeking their out-of-pocket costs for the purchase, the option of recouping that

cost through the Recall program does not moot their claims.

As the Defendant concedes in its supplemental brief, the reimbursement offer through the

Recall program does not moot the Plaintiffs' claims in the constitutional sense, because it would

not offer the Plaintiffs the complete remedy they seek. Rather, the Defendant argues that the

existence of the Recall program renders the Plaintiffs unable to state a claim for damages under

the state deceptive practice statutes. The Court disagrees.

While the Court recognizes that other courts in the Similac cases have reached a different

conclusion, there is no bar preventing plaintiffs from forgoing compensation through a voluntary

refund program in order to pursue their claims in a consumer class action. In contrast to the

cases cited by the Defendant, the conditions of the Recall program were not part of the "benefit-

of-the-bargain" when they purchased the product, see Thiedemann v. Mercedes-Benz USA,

LLC, 183 N.J. 234, 251, 872 A.2d 783 (N.J. 2005) ("Indeed, the warranty provided as part of the

contract of sale or lease is part of the benefit of the bargain between the parties. The defects that

arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate

"loss" that the [New Jersey Consumer Fraud Act ("CFA")] expressly requires for a private claim

under the CFA . . . ."), nor do the Plaintiffs claim that the Recall program constituted a deceptive

act or practice, see Jorge v. Toyota Motor Insurance Services, Inc., 2006 WL 2129026, at *4-5

(N.J. Super. A.D. 2006) (finding no ascertainable loss under the New Jersey Consumer Fraud

Act where the plaintiff failed to avail herself of repair or replacement services that were subject

of a vehicle services agreement between the parties that the plaintiff alleged was unfair and

deceptive, rendering the claimed loss hypothetical and therefore not cognizable).

The wisdom of the Plaintiffs' decision to forgo the Recall program is questionable,

particularly in light of the number of cases that have denied class certification in consumer class

actions because a voluntary recall and/or refund program provided a superior method of

compensating the putative class members. As the court explained in In re Aqua Dots Products

Liability Litigation, 270 F.R.D. 377 (N.D. Ill. 2010):

> Where available refunds afford class members a comparable or
> even better remedy than they could hope to achieve in court, a
> class action would merely divert a substantial percentage of the
> refunds' aggregate value to the class lawyers. For this reason,
> among others, rational class members would not choose to litigate
> a multiyear class action just to procure refunds that are readily
> available here and now. Not so for the class lawyers; . . . At
> bottom, this is a suit to recover the purchase price of tainted Aqua
> Dots. Since the defendants will provide a refund-without needless
> judicial intervention, lawyer's fees, or delay-to any purchaser who
> asks for one, there is no realistic sense in which putative class
> members would be better off coming to court. From their
> perspective, a class action is not the superior alternative. The court
> therefore declines to certify any of the proposed classes.

Id. at 383–85; see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 214 F.R.D. 614,

621–23 (W.D. Wash. 2003) (holding that the voluntary refund program was superior to a class

action to recover for economic injuries resulting from the purchase of recalled products,

regardless of the facts that the program had proof of purchase requirements; that the majority of

the refunds were provided to retailers; and that each individual had to actually seek out a refund,

and holding that the need to use the class action vehicle to deter future misconduct was

diminished by the multitude of personal injury actions commenced against the defendant based

on the same product defect); Chin v. Chrysler Corp., 182 F.R.D. 448, 463 (D.N.J. 1998) ("The

lack of superiority of a nationwide class action in this case is also shown by the fact that, as a

result of Chrysler's voluntary recall, it is unclear if there is any useful remedy this Court could

fashion under the laws of certain states even for those Plaintiffs who have suffered problems with their ABS systems.").

Furthermore, the New York and New Hampshire statutes provide for a minimum amount of statutory damages. Thus, even assuming the Plaintiffs were able to prove injury, but their damages were less than the statutory minimum, they would still be entitled to the minimum amount of statutory damages. Kim v. BMW of Manhattan, Inc., 11 Misc.3d 1078(A), 819 N.Y.S.2d 848 (Table) (N.Y. Sup. 2005) ("Plaintiffs here have not alleged pecuniary damages. Accordingly, they are entitled to the statuary damages of $50."); Becksted v. Nadeau, 155 N.H. 615, 926 A.2d 819 (N.H. 2007) ("[NHDPA] does not require a showing of actual damages for the claimant to be awarded the statutory minimum and attorney's fees."); Carter v. Lachance, 146 N.H. 11, 14, 766 A.2d 717 (2001) ("[T]he statute mandates that the trial court award the prevailing plaintiff the minimum of $1,000 in damages plus costs and reasonable attorney's fees."); cf. Mayline Enters., Inc. v. Milea Truck Sales Corp., 641 F. Supp. 2d 304, 309 (S.D.N.Y. 2009) ("Defendant claims that the [Federal Odometer Act claim] should be dismissed because plaintiff suffered no actual damages. But this is a silly argument; one can never have no damages for violation of a statute that provides for statutory damages."). In fact, the New Hampshire Supreme Court has specifically noted that the damages provisions of the statute "relieve the plaintiff from the usual requirement of pleading and proving damages and of pleading costs and attorney's fees." Preferred Nat. Ins. Co. v. Docusource, Inc., 149 N.H. 759, 829 A.2d 1068 (N.H. 2003).

Accordingly, the Court finds that the existence of the Recall program does not render the parties claims under the NYCPA and the NHDPA moot. The Texas statute presents a more complicated question.

Under the TDTPA, it is a "defense to a cause of action", if, within 30 days of receiving notice of the claim, the defendant "tendered to the consumer: (1) the amount of actual damages claimed; and (2) the expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant." Tex. Bus. & Com. Code § 17.506(d). The reasonableness of a defendant's tender is a fact-specific inquiry.

As previously stated, the Texas Plaintiffs have yet to provide the Defendant with a notice setting forth "in reasonable detail . . . the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant." See Tex. Bus. & Com. Code § 17.505(a). By contrast, in the case relied upon by the Defendant, Stanley v. Wal-Mart Stores, Inc., 839 F. Supp. 430, 434 (N.D. Tex. 1993), the plaintiff had timely provided the defendants, Wal-Mart and Toys-R-Us ("Toys"), with notice prior to initiating the lawsuit. Thus, the Court was able to assess the reasonableness of the defendants tender in dismissing the plaintiffs' TDTPA claim on summary judgment.

The Defendant seeks to have this Court find, as a matter of law, that the Recall program reasonably satisfies any potential amount of damages. However, as indicated in the complaint, the Texas Plaintiffs seek damages under the Texas statute not only for out-of-pocket losses, but also for mental anguish. The Court cannot say at this stage in the litigation that the Texas Plaintiffs will be unable to recover for mental anguish. Furthermore, the Court is unlikely to find a request for all the attorneys' fees associated with commencing and prosecuting the instant case to be reasonable. Indeed, it would undermine the statute to reward attorneys who disregard the plain language of its provisions by failing to provide "presuit" or even "timely" notice. However, there may be some reasonable level of attorneys' fees associated with preparing the

notice and litigating any disputes over the reasonableness of the tender.  Ultimately, without

more specific information about the amount requested, the Court cannot, as a matter of law, rule

that the Recall program would reasonably compensate the Texas Plaintiffs.  Thus, whether the

Defendant's Recall program constitutes a reasonable offer under the statute is not ripe for

review.

**5.  Whether the Plaintiffs have Stated a Claim for Injunctive Relief**

In both the amended and proposed second amended complaints, the Plaintiffs assert a

claim for injunctive relief, seeking "an order prohibiting, restraining and

preliminarily/permanently enjoining ABBOTT from engaging in the false, misleading, or

deceptive acts or practices alleged herein".  (Am. Compl., ¶ 112; PSAC, ¶ 135.)  However, under

all three consumer protection statutes, an injunction is a remedy, and not a separate cause of

action.  See N.H. Rev. Stat. Ann. § 358-A:10; N.Y. Gen. Bus. Law § 349(h); Tex. Bus. & Com.

Code § 17.50(b)(2); see also Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406–07 (S.D.N.Y.

2010) (dismissing a plaintiff's causes of action for declaratory and injunctive relief based on

NYCPA violations because "[d]eclaratory judgments and injunctions are remedies, not causes of

action", but deeming these remedies "added to [the plaintiff's] ad damnum clause").  Thus, the

Plaintiffs may seek injunctive relief in their Prayer for Relief, but the Defendant's motion to

dismiss the request for injunctive relief as a separate claim is granted.

**IV.  CONCLUSION**

For the foregoing reasons, it is hereby:

**ORDERED**, that plaintiff Shelly A. Leonard's claims are dismissed pursuant to Rule

41(a)(2) without prejudice with leave to renew her individual claims or any claims on behalf of

her infant/child in the event the Court certifies a class under Federal of Civil Procedure 23, and it is further

**ORDERED**, that the Plaintiffs' motion to add Kristie Pagan as a plaintiff and putative New York class representative is granted, and it is further

**ORDERED**, that the Plaintiffs' motion to amend the complaint to remove the New York Plaintiff's express waiver of punitive damages under the NYCPA is denied, and it is further

**ORDERED**, that the Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) dismissing the Ohio Plaintiff's claims under the OCSPA and ODTPA is granted, and it is further

**ORDERED**, that the Texas Plaintiffs' TDTPA claim is abated for sixty days after the Texas Plaintiffs serve written notice on Abbott. The Texas Plaintiffs must provide notice within twenty days of the date this Order issues, and notify the Court when they have done so, and it is further

**ORDERED**, that the Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) as to the Plaintiffs' claims under the NYCPA, NHCPA, and TDTPA is denied, and it is further

**ORDERED**, that the Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) as to the Plaintiffs' claim for injunctive relief is granted, and it is further

**ORDERED**, that the Plaintiffs are directed to file a second amended complaint consistent with the rulings contained herein within 20 days of the date of this order. If the Texas Plaintiffs do not comply with the notice requirement within twenty days of the date of this order, the Court will consider a motion by the Defendant to dismiss any claims asserted on behalf of the Texas Plaintiffs in the second amended complaint.

**SO ORDERED.**
Dated: Central Islip, New York
        March 5, 2012

                                  ___/s/ Arthur D. Spatt_____
                                   ARTHUR D. SPATT
                                  United States District Judge