UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

KRISTIE PAGAN, ESTHER ALEXANDER,
BRIDGETT HERRERA, VELICIA MATA and  :
ASHLEY SULLIVAN, individually and as parents
and natural guardians of their minor children and on :   2:10-cv-04676-ADS-WDW
behalf of all others similarly situated,

                                 :

               Plaintiffs,

                                 :

              - against -

                                 :

ABBOTT LABORATORIES, INC.,

                                 :

               Defendant.

                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR RULE 23 CLASS CERTIFICATION**

Steven Bennett Blau
BLAU, BROWN & LEONARD LLC
224 West 30th Street, Suite 809
New York, New York 10001
(212) 725-7272
(212) 488-4848 (fax)
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF MATERIAL FACTS ............................................................ 1

ARGUMENT

POINT I.     CLASS CERTIFICATION IS THE ONLY JUDICIOUS MEANS OF
CHALLENGING ABBOTT'S DECEPTIVE BUSINESS PRACTICES .............. 5

POINT II.    THE LEGAL STANDARD FOR RULE 23 CLASS CERTIFICATION .............. 6

POINT III.   ALL OF THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED

       a.  Numerosity ................................................................................... 8

       b.  Commonality ................................................................................. 9

       c.  Typicality ...................................................................................... 10

       d.  Plaintiffs and Their Counsel Will Fairly and Adequately
Protect the Interests of the Proposed Class ................................ 12

POINT IV.   A CLASS IS MAINTAINABLE UNDER RULE 23(B) (3) ............................... 13

      A. Class Certification Is Appropriate Under Rule 23(b) (3) Because
Common Questions Predominate Over Individual Questions .................... 14

      B. The Class Action Is "Superior" To Other Means Of Adjudication ............. 15

      C. A Class Action is Manageable In This Litigation ...................................... 17

      D. Plaintiffs' Damages Methodology Model .................................................. 19

POINT V.    PUTATIVE MEMBERS OF THE CLASS SHOULD
BE NOTIFIED OF THIS LITIGATION .............................................. 20

IN CONCLUSION ................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591(1997) ................................................. 5,6

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (2001) ............................... 12

*Baby Neal for & by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) ................................. 5

*Bigelow v. RKO Radio Pictures*, 327 U.S. 251 (1946) ................................................ 19

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D 144 (2002) ................................ 14

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (1999) .................................. 9

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,*
    504 F.3d 229 (2d Cir.2007) .................................................................................. 8, 9

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.,*
    502 F.3d 91 (2d Cir.2007) .................................................................................. 16

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir.2006) ........................................ 12

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.RD.54 (D. Mass. 1997) ............ 18

*East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395 (1977) ................ 10

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974) .................................................... 6

*Eisen v. Carlisle and Jacquelin,* 52 F.R.D. 253 (S.D.N.Y. 1971) ............................... 19

*Fogarazzo v. Lehman Bros., Inc.,* 263 F.R.D. 90 (S.D.N.Y.2009) .............................. 8

*Fuller v. Fruehauf,* 168 F.R.D. 588 (E.D. Mich. 1996) .............................................. 11

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 114 F.R.D. 48 (S.D.N.Y. 1987) .......... 14

*Georgine v. Amchem*, 83 F.3d 610 (3d Cir. 1996) ....................................................... 13

*Georgine v. Amchem*, 83 F.3d 610 (3d Cir. 1996), *affd*, 521 U.S. 591 (1997) ............ 13

*Georgine v. Amchem. Prods., Inc.,* 83 F.3d 610 (3d Cir.1996) .................................. 6

*Green v. Wolf Corp.,* 406 F2d 291 (2d Cir. 1968) ....................................................... 6

*Hoffman-LaRoche Inc. v. Sperling,* 110 S.Ct. 482 (1989) .......................................... 21

*In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145 (2d Cir.1987) ....................... 9

*In re Currency Conversion Fee Antitrust Litigation,* 264 F.R.D. 100 (S.D.N.Y.2010) .............. 16

*In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285 (2d Cir. 1992) ................................... 12

*In re Flag Telecom Holdings, Ltd. Securities Litigation,* 574 F.3d 29 (2d Cir.2009) ........... 11, 12

*In re Initial Public Offering Securities Litigation,* 243 F.R.D. 79 (S.D.N.Y.2007) .................... 16

*In re Initial Public Offerings Securities Litigation,* 471 F.3d 24 (2d Cir.2006). ........................... 7

*In re Playmobil Antitrust Litigation,* 35 F.Supp.2d 231 (E.D.N.Y. 1998) ..................................... 9

*In re Salomon Analyst Metromedia Litigation,* 544 F.3d 474 (2d Cir. 2008)............................... 14

*In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124 (2nd Cir. 2001) ................. 15,17,18

*Jermyn v. Best Buy Stores, L.P,* .256 F.R.D. 418 (S.D.N.Y.2009)......................................... 11,18

*Krueger v. New York Tel. Co.,* 163 F.R.D. 433 (S.D.N.Y.1995).................................................... 9

*Lewis v. Curtis,* 671 F.2d 779, 788 (3d.Cir. 1982) ................................................................... 12

*Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) ......................................................... 8,12

*Martens v. Smith Barney* 181 F.R.D. 243 (S.D.N.Y. 1998) ........................................................ 13

*Masson v. Ecolab, Inc.,* 2005 WL 2000133 (S.D.N.Y. 2005) ..................................................... 21

*McLaughlin v. American Tobacco Co.,* 522 F.3d 215 (2d Cir.2008) .......................................... 15

*Monaco v. Stone,* 187 F.R.D. 50 (E.D.N.Y.1999) ........................................................................ 9

*Paxton v. Union National Bank,* 688 F.2d 552 (8th Cir. 1982) .................................................. 11

*Pecere v. Empire Blue Cross & Blue Shield,* 194 F.R.D. 66 (E.D.N.Y. 2000) ............................ 6

*Phillips Petroleum v. Shutts,* 472 U.S. 797 (1985) ..................................................................... 16

*Primavera Familienstiftung v. Askin,* 178 F.R.D. 405 (S.D.N.Y.1998)........................................ 8

*Radmanovich v. Combined Ins. Co. of Am.,* 216 F.R.D. 424 (N.D.Ill.2003)............................... 14

*Reiter v. Sonotone Corp.,* 442 U.S. 330 (1979) ........................................................................... 6

*Robidoux v. Celani,* 987 F.2d 931 (2d Cir.1993)...................................................................... 8,11

*Roby v. St. Louis Southwestern Ry. Co.,* 775 F.2d 959 (8th Cir. 1985) ...................................... 11

*Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590 (2d Cir. 1986) ................................................ 13

*Seijas v. Republic of Argentina,* 606 F.3d 53 (2d Cir.2010) ..................................................... 5, 15

*Stewart v. Associates Consumer Discount Company*, 183 F.R.D. 189 (E.D. Pa. 1998)................ 6

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.,* 262 F.3d 134 (2d Cir.2001). ................ 7

*Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672 (7th Cir. 2001) ............................................. 17

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196
  (2d Cir.2008) ........................................................................................................................ 7

*UFCW Local 1776 v. Eli Lilly and Co.,* 620 F.3d 121, 131 (2d Cir.2010)................................. 14

*United States Fidelity & Guar. Co. v. Madison Fin. Corp.,* No. 01 Civ. 3998, 2002 WL
  31731020 (S.D.N.Y. Dec. 4, 2002) ...................................................................................... 8

*United States Parole Commission v. Geraghty,* 445 U.S. 388 (1980)........................................... 6

*Wade v. Union Carbide & Carbon Corp.,* 371 U.S. 801(1962) .................................................... 19

*Wal–Mart Stores, Inc. v. Dukes,* ——U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)........... 9

*Weissman v. ABC Fin. Services, Inc.,* 203 F.R.D. 81, 84 (E.D.N.Y. 2001) .................................. 9

**Statute**

Fed. R. Civ. P. 23 ....................................................................... 1,5,6,7,8,9,11,12,13,14,17,18,20

New Hampshire Consumer Protection Act, Title XXXI, Chapter 358A, §§ 358-A: 10 ...... 1,10,19

New York General Business Law §349 .......................................................................... 1,10,19

## PRELIMINARY STATEMENT

This is a proposed Rule 23 Class action on behalf of New York and New Hampshire residents seeking declaratory, injunctive and monetary relief and redress for **ABBOTT LABORATORIES, INC.'s ("ABBOTT"),** unfair and deceptive acts and business practices, in connection with the manufacture, marketing and sale of its Similac Infant Formula (hereinafter "SIMILAC"), in violation of New York and New Hampshire consumer protection laws.

Plaintiffs bring this action on behalf of themselves, their infant children and putative sub-classes (the "Class") comprised of all similarly situated ultimate consumers who purchased recalled SIMILAC product which ABBOTT deceptively promoted, marketed, advertised, packaged, labeled, distributed and/or sold as containing ingredients safe for infant consumption. Contrary to ABBOTT's assuring representations to the public, at the time placed into the stream of commerce, the recalled SIMILAC products were known by ABBOTT to have been contaminated with insect/ beetle particles and larvae, which can be dangerous to the health, safety and well being of newborns/infants and did, in fact, cause Plaintiffs' offspring to suffer from gastroenteritis, related symptoms, pain and discomfort.

Plaintiffs now move pursuant to Fed. R. Civ. P. 23, for an Order certifying this civil litigation as a Class Action with respect to the New York and New Hampshire subclasses. Proceedings in connection with the putative Texas subclass have been stayed by this Court. [See Document No. 47] For all the reasons hereinafter set forth, the requested relief should be granted.

## STATEMENT OF MATERIAL FACTS

ABBOTT formulates, designs, manufactures, markets, advertises, distributes and sells SIMILAC products, which it promotes on its packaging, as being safe for infants. ABBOTT's

1

product packaging describes SIMILAC as being a formula approved and used most by hospitals, because it is safe for the consumption by infants. (Exhibit "A") (*Second Amended Complaint, ¶ 23, 24*)  SIMILAC products are sold in grocery stores, pharmacies and retail outlets and in 2010 ABBOTT sold millions of units of SIMILAC products in the United States.[1]

The FDA monitors infant formula products and conducts inspections of facilities that manufacture infant formula, including the ABBOTT facility in Sturgis, Michigan. (Exhibit "A") (*Second Amended Complaint, ¶ 26*) At all relevant times herein, ABBOTT was on notice that FDA regulations require that infant formula products, including SIMILAC, be totally free of pests/insects. (Exhibit "A") (*Second Amended Complaint, ¶ 27*)  In 2010, ABBOTT determined that there was a "potential" for the presence of beetles in its commercially distributed SIMILAC product. ABBOTT notified FDA on September 20, 2010 of its intent to initiate a voluntary recall of multiple SIMILAC powder infant formula products in the U.S., Puerto Rico, Guam and some countries in the Carribean. (Exhibit "A") (*Second Amended Complaint, ¶ 28, 29*)  On September 22, 2010, ABBOTT voluntarily recalled approximately 5 million units of SIMILAC powder product lot numbers.

The evidence establishes that ABBOTT knew that its Sturgis manufacturing facility had become infested with insects, including beetles and beetle larvae, 45 months before the recall and as early as January 2007. Continuously from 03/30/09 to the time of recall, "high levels "of these insects/pests were reported in writing to ABBOTT, by its pest control vendor. (Exhibit "A") (*Second Amended Complaint, ¶36, 38*)  In addition, prior to the recall, from January 2010 to

---

[1] Evidence supporting this Material Statement of Facts, has been previously submitted and filed under seal and is incorporated herein by reference.  See ECF Docket No. 38, dated February 1, 2012.  A courtesy copy of the foregoing will be provided in connection with this application, for *in camera* review.  Allegations in the Second Amended Complaint, designated Exhibit A, summarize and describe the information contained in these sealed documents.

2

August 2010 ABBOTT received 238 consumer infestation complaints for product manufactured at Sturgis. No duct cleaning was performed at ABBOTT'S Sturgis facility in 2007, 2008 and 2009.  (Exhibit "A") *(Second Amended Complaint, ¶43)*  Further, for the five (5) consecutive years prior to the recall, there were no fumigations ever performed at  this location, (Exhibit "A") *(Second Amended Complaint, ¶41)*, notwithstanding the fact that fumigation is the only known effective means of controlling and eradicating warehouse beetles, their eggs and larvae. (Exhibit "A") *(Second Amended Complaint, ¶37)*

In or about February 2010, via internal Management Review Report, ABBOTT corporate management was advised about the progressive upward trends in insect infestation at the Sturgis facility and the feasibility of plant fumigation to eradicate/control the problem. (Exhibit "A") *(Second Amended Complaint, ¶39)*  Prior to the SIMILAC recall, fumigation of the Sturgis facility was not approved by ABBOTT corporate management, because it would cost ABBOTT several million dollars in product loss while the plant was down and in fumigation costs. (Exhibit "A")*(Second Amended Complaint, ¶40)*  In stark contrast, post-recall, and as of September 2010, forty (40) locations in eleven (11) buildings at ABBOTT'S Sturgis Facility were verified for fumigation of these pests/insects.

In September/October 2010, ABBOTT's internal investigation (Exception Report 291756) determined that the root cause for the beetles entering the product stream in the Sturgis facility was defective design elements and ABBOTT's failure to implement proper safeguards to prevent ingress of pests during periods of maintenance.  Of significance, is the fact that prior to the recall, ABBOTT did not have a preventive maintenance schedule or records keeping protocol in connection with pest control.

The FDA conducted inspections of ABBOTT's Sturgis facility on multiple occasions in September and October 2010. In connection therewith, the FDA issued a Form 483 Report, dated 10/22/10, and observed in pertinent part, that ABBOTT's Sturgis facility failed to manufacture foods under conditions and controls necessary to minimize contamination; and that ABBOTT personnel failed to take effective measures to exclude pests from the processing areas.

The gravamen of the deceptive business practices in this case is that for a significant time prior to the recall, ABBOTT possessed exclusive knowledge that its Sturgis manufacturing facility and the SIMILAC products processed therein, were adulterated with contaminants, including insect/ beetle particles and larvae. In order to maintain its revenues and profit margins ABBOTT predictably engaged in deceptive acts and practices by failing to warn the FDA and SIMILAC ultimate consumers of these ominous facts. Unfortunately, reasonable consumers, including Plaintiffs, were not in a position that they could discover such disturbing information. Instead, Plaintiffs and putative members of the Class, (all concerned parents), kept the faith and relied on ABBOTT's representations (albeit false) that SIMILAC was a formula approved and used most by hospitals, because it is safe for the consumption by infants. (Exhibit "A")(*(Second Amended Complaint, ¶65)* ABBOTT mislead consumers, including the Plaintiffs, into believing that SIMILAC was safe for a particular use, (here, infant nutrition and development) when it was not. Thus, ABBOTT engaged in deceptive business practices by omission, because it was aware that SIMILAC was contaminated with insect/ beetle particles and larvae, and therefore not safe for ingestion by newborns/infants and failed to disclose that information to consumers, including Plaintiffs.

ABBOTT commands a premium price for SIMILAC by distinguishing itself from other competitive infant formulas by marketing and advertising on its packaging that SIMILAC is a

formula approved and used most by hospitals, because it is safe for the consumption by infants. (Exhibit "A")*(Second Amended Complaint, ¶65)*  It is alleged by Plaintiffs, that had they  known the truth that the statements they relied upon were false, misleading, deceptive and unfair and that SIMILAC products were adulterated with contaminants, including insect/ beetle particles and larvae, they would have neither purchased SIMILAC, nor paid the premium price ABBOTT charges for (Exhibit "A")*(Second Amended Complaint, ¶67)* But for ABBOTT's deceptive business practices and misrepresentations, Plaintiffs and putative members of the class would have purchased competitors' safer powder infant formulae, at a fraction of  the price.

## ARGUMENT

**POINT I.       CLASS CERTIFICATION IS THE ONLY JUDICIOUS MEANS OF
                CHALLENGING ABBOTT'S DECEPTIVE BUSINESS PRACTICES**

A class action is superior to the other available methods for fairly and efficiently adjudicating this controversy.  This is a consumer case in which Class members, in most instances, will possess average claims of less than one thousand dollars ($1,000) in statutory damages.  Where proceeding individually would be prohibitive due to the minimal recovery, "the class action device is frequently superior to individual actions." *Seijas v. Republic of Argentina,* 606 F.3d 53, 58 (2d Cir.2010).  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997).

The requirements of Rule 23 are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 555 (3d Cir. 1994).  It is well established that

the criteria set forth in Rule 23 are to be liberally construed and that the courts have considerable

discretion in determining whether to certify a class. *Green v. Wolf Corp.,* 406 F2d 291, 298 (2d

Cir. 1968), see also, *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y.

2000).

**POINT II.      <u>THE LEGAL STANDARD FOR RULE 23 CLASS CERTIFICATION</u>**

Courts have broad discretion in determining whether the elements of Rule 23 (a) have

been satisfied. *Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) (holding that district courts are

vested with broad power and discretion in matters of certification and management of class

actions). It is not necessary for Plaintiffs to establish the merits of their case at the certification

stage, and in determining whether the class will be certified, the substantive allegations of the

complaint must be taken as true. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974).

Moreover, Plaintiffs need not prove that all class members have been damaged in order to certify

the Class. *Stewart v. Associates Consumer Discount Company*, 183 F.R.D. 189, 194 (E.D. Pa.

1998).

For class certification, the class need only satisfy the technical requirements of Rule

23(a). If the Rule 23(a) requirements are met, the court must then find that the class fits within

one (1) of the three (3) categories of class actions set forth in Federal Rule of Civil Procedure

23(b).; *Georgine v. Amchem. Prods., Inc.,* 83 F.3d 610, 624 (3d Cir.1996), *aff'd. Amchem Prods.,*

*Inc. v. Windsor,* 521 U.S. 591(1997). Once the Court is satisfied that these requirements are met,

certification is a matter of right. *United States Parole Commission v. Geraghty*, 445 U.S. 388,

403 (1980).

"In determining whether class certification is appropriate, a district court must first

ascertain whether the claims meet the preconditions of Rule 23(a) of numerosity, commonality,

typicality, and adequacy." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 201–202 (2d Cir.2008). If these conditions are satisfied, the Court may then grant class certification where it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b) (3). The district court is afforded broad discretion in class certification questions due to the fact that "the district court is often in the best position to assess the propriety of the class [action] and has the ability ... to alter or modify the class, create subclasses, and decertify the class whenever warranted." *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.,* 262 F.3d 134, 139 (2d Cir.2001).

Within the Second Circuit, a certifying court "must [have] receive[d] enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Public Offerings Securities Litigation,* 471 F.3d 24, 41 (2d Cir.2006). "[T]he preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements." *Bombardier,* 546 F.3d at 202. The Court must still make factual determinations where there is "overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." *Id.* However, "in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Id.*

**POINT III**.   <u>**ALL OF THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED**</u>

As hereinafter demonstrated, Plaintiffs meet the requirements to certify a class under both Rule 23(a) and Rule 23(b) (3).

a.      **Numerosity**

Rule 23(a) (1) provides that a member of a class may sue on behalf of all class members only if "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a) (1). "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,* 504 F.3d 229, 244–45 (2d Cir.2007).  Plaintiffs need not prove the exact number of class members; they only need to show that the class is so numerous that the joinder of all potential plaintiffs would be difficult or inconvenient. See *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993); *Primavera Familienstiftung v. Askin,* 178 F.R.D. 405, 409 (S.D.N.Y.1998).  Impracticable does not mean that joinder of all parties must be impossible, but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,* 504 F.3d 229, 244–45 (2d Cir.2007).  Practicability generally "depends on all the circumstances surrounding a case." *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir.1993).  Relevant factors include "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id.*  Joinder is generally presumed to be impracticable when a putative class exceeds 40 members. *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) ( *per curiam* ); *Fogarazzo v. Lehman Bros., Inc.,* 263 F.R.D. 90, 96 (S.D.N.Y.2009).  However, "no magic minimum number ... establishes numerosity," *United States Fidelity & Guar. Co. v. Madison Fin. Corp.,* No. 01 Civ. 3998, 2002 WL 31731020, at

8

(S.D.N.Y. Dec. 4, 2002), and "courts may make common sense assumptions to support a finding of numerosity." *Weissman v. ABC Fin. Services, Inc.,* 203 F.R.D. 81, 84 (E.D.N.Y. 2001). Also, see Newberg on Class Actions, §3.5 at 247-48 (4th ed.).  Here, Plaintiffs easily surpass the numerosity hurdle and reasonably estimate at least several hundred thousand putative Class members from New York and New Hampshire who were ultimate consumers of the recalled SIMILAC products.

b. **Commonality**

  Rule 23(a) (2) requires that a plaintiff establish that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a) (2).  The "commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Cent. States Se. & Sw. Areas Health & Welfare Fund,* 504 F.3d at 245.  Rule 23(a) (2) does not require the plaintiff to demonstrate that the class members' claims are identical. *Caridad,* 191 F.3d at 293.  Rather, it demands that the disputed issue of law or fact "occup [ies] essentially the same degree of centrality to the named Plaintiffs' claim as to that of other members of the proposed class." *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y.1995); see also *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 166-67 (2d Cir.1987)

  A single common issue of law will satisfy the commonality requirement. *Monaco v. Stone,* 187 F.R.D. 50, 61 (E.D.N.Y.1999).  A common issue of law will be found if plaintiffs "identify some unifying thread among the members' claims...." *Id.*  A court may find a common issue of law even though there exists "some factual variation among class members' specific grievances...." *In re Playmobil,* 35 F.Supp.2d at 240.

9

The Supreme Court recently examined the commonality requirement in *Wal–Mart Stores, Inc. v. Dukes,* ––––U.S. ––––, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).  The Court emphasized that commonality "does not mean merely that [class members] have all suffered a violation of the same provision of law." *Id.* at 2551.  Rather, the class members' claims "must depend upon a common contention ... which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

The questions of law and fact in this case are common to the class and predominate over any questions affecting only individual class members. These common questions are as follows:

(a)      With respect to the New York class, whether ABBOTT's deceptive acts or practices in the conduct of its business, trade or commerce of Similac products, violated §349 of the New York General Business Law.

(b)      With respect to the New Hampshire class, whether ABBOTT's deceptive acts or practices in the conduct of its business, trade or commerce of Similac products, violated the New Hampshire Consumer Protection Act, Title XXXI, Chapter 358A, §§358a:2 *et.seq.*

(c)      Whether ABBOTT's deceptive business practices caused injury/damage to ultimate consumers of the recalled Similac products including Plaintiffs and putative members of the class.

**c.**      **Typicality**

The Supreme Court has held that the typicality requirement mandates that the putative members of the Class and the representative Plaintiff "possess the same interests and suffer the same injury." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395,403 (1977). Here, this requirement has been satisfied. Typicality exists where "the claims or defenses of the

10

representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a) (3).

"To establish typicality under Rule 23(a)(3), the party seeking certification must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Securities Litigation,* 574 F.3d 29, 35 (2d Cir.2009) (quotation marks omitted).  Thus, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir.1993). "Since each member of the class complains of the same conduct-he made a purchase at Best Buy, subsequently asked to receive the benefits of the price match guarantee and was denied the benefits of the policy-is suing under the same theory of liability and requesting the same type of relief, the typicality requirement is satisfied." *Jermyn v. Best Buy Stores, L.P.,* 256 F.R.D. 418 (S.D.N.Y.2009).

The presence of claims that require proof of individual reliance, does not defeat "typicality," particularly where, as here, there is an alleged common course of conduct. See *Fuller v. Fruehauf*, 168 F.R.D. 588, 600 (E.D. Mich. 1996). To be given authority to represent a class, a named plaintiff must, as present in the instant litigation, have common interests with class members and the ability and willingness to vigorously pursue the interests of the class. *Paxton v. Union National Bank*, 688 F.2d 552 (8th Cir. 1982).  Further, Plaintiffs also satisfy the fundamental requirement that they, as putative class representatives, are members of the classes they seek to represent and possess the same interest and have suffered the same injury at the members of the class. *Roby v. St. Louis Southwestern Ry. Co.*, 775 F.2d 959,961(8th Cir. 1985). By reason of all of the foregoing, plaintiffs have demonstrated the requisite typicality.

**d.     Plaintiffs and Their Counsel Will Fairly and Adequately
Protect the Interests of the Proposed Class**

The final requirement of Rule 23(a) is that "the representative parties will fairly and

adequately protect the interests of the class."   The requirements of Rule 23(a)(4) are met if it

appears that (a) Plaintiff's attorneys are qualified, experienced and generally able to conduct the

litigation, and (b) Plaintiffs' interests are not antagonistic to those of the class they seek to

represent. See, *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir.2006); *Lewis v. Curtis*,

671 F.2d 779, 788 (3d.Cir. 1982).   The existence of the elements of adequate representation

are presumed and the burden is on the defendant to demonstrate that the representation will be

inadequate. *Lewis,* 671 F. 2d at 788.   Nonetheless, both prongs of the adequacy" test are

sufficiently met in this case.

The Plaintiffs are represented by counsel who are experienced in class actions in labor

and employment law and have "demonstrated a level of competence ensuring that they can fairly

and adequately represent" consumers in cases such as this one.   *Ansoumana*, 201 F.R.D. at 87.

In fact, public records evidence that Plaintiffs' counsel has already demonstrated in other Class

actions, that it is "qualified, experienced and generally able to conduct the litigation." *In re*

*Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Further, in this case there is no conflict of interest between the named Plaintiffs and

putative members of the Class. *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir 1997).  To

defeat a motion for certification, any such conflicts "must be fundamental." *In re Flag Telecom*

*Holdings, Ltd. Securities Litigation,* 574 F.3d 29, 35 (2d Cir.2009). Where, as here, the named

Plaintiffs' claims are essentially identical to those of the rest of the Class, there are no

antagonistic interests that go to the subject matter of the suit.  As described above, the claims of

12

Plaintiffs are typical, in that they possess the same interest and have suffered the same injury as the members of the Class. Plaintiffs have zero conflicts with potential Class members, and there otherwise is no indication that a fundamental conflict might exist precluding certification. There is no basis in law or fact establishing that either Plaintiffs and/or their counsel will not fairly and adequately protect the interests of the proposed class.

**POINT IV.   <u>A CLASS IS MAINTAINABLE UNDER RULE 23(B) (3)</u>**

Once the court finds that all of the Rule 23(a) prerequisites are met, it must also determine whether class certification is proper under Rule 23(b).  In order to be certified, a Class need only satisfy one subsection of Rule 23(b).  *Georgine v.  Amchem*, 83 F.3d 610, 624 (3d Cir. 1996), *affd*, 521 U.S. 591 (1997).  Plaintiff seeks class certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b) (3), Fed.R.Civ.P.

Here, Plaintiffs easily vault the various Rule 23(a) criteria, and this is perhaps the best indicator that Rule 23(b) (3) is satisfied.  *See, Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b) (3) requirement of commonality"); *Martens v. Smith Barney*181 F.R.D. 243, 260 (S.D.N.Y. 1998).

The core legal and factual issues in this action do not require individualized determination, but can be resolved through generalized proof applicable to the Class.  As described above, the parties dispute ABBOTT'S knowledge of the extent of insect contamination in its SIMILAC product at the time placed in the stream of commerce.  The resolution of this issue applies to all Class members' claims.  Because the complaint seeks statutory damages, there

will be little need for individualized damages determinations.  ABBOTT has raised no other issue that could require individualized determination.

## A.     Class Certification Is Appropriate Under Rule 23(b) (3) Because Common Questions Predominate Over Individual Questions

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly and Co.,* 620 F.3d 121, 131 (2d Cir.2010). The inquiry "tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation." *Salomon Analyst,* 544 F.3d at 480 (quotation marks omitted).

Predominance exists where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b) (3).  To satisfy predominance, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *In re Salomon Analyst Metromedia Litigation,* 544 F.3d 474, 480 (2d Cir.2008) (quotation marks omitted).  The existence of factual or legal differences within a class does not foreclose a plaintiff from establishing predominance. *Id.*; *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D.Ill.2003) ("Although the common issues must predominate the case, it is not necessary that the plaintiff show them to be exclusive.").

When determining if plaintiffs have met the predominance requirement, district courts focus on questions of liability, not damages.  *Radmanovich,* 216 F.R.D. at 435. (citation omitted).  The Court must focus on *liability* and whether the liability issue is common to the class. *See Bolanos*, 212 F.R.D at 157-158 (citing *Genden v. Merrill Lynch, Pierce, Fenner &*

14

*Smith, Inc.,* 114 F.R.D. 48, 52 (S.D.N.Y. 1987).  The need to prove actual losses individually

incurred by each class member does not defeat predominance because differences in the amount

and recoverability of individual damages do not necessarily make class actions unmanageable.

*See McLaughlin v. American Tobacco Co.,* 522 F.3d 215, 231 (2d Cir.2008); *In re Visa*

*Check/MasterMoney Antitrust Litigation,* 280 F.3d 124, 140 (2d Cir.2001); "It is well-established

that individual questions with respect to damages will not defeat class certification or render a

proposed representative inadequate unless that issue creates a conflict which goes to the heart of

the lawsuit." *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 86 (S.D.N.Y.2001)

(*quoting  In re AM Int'l, Inc. Sec. Litig.,* 108 F.R.D. 190, 196 (S.D.N.Y.1985)).  No such conflict

exists in this case.

The common questions of law and fact in this action are best resolved by a class action as

opposed to the filing and prosecution of hundreds, if not thousands, of other lawsuits by

individual ultimate consumers of recalled SIMILAC product. The common questions of fact and

law in this litigation are simple and straight forward; set forth above in POINT III (b).  Under

these circumstances, common questions clearly predominate.

**B.      The Class Action Is "Superior" To Other Means Of Adjudication**

Here, the superiority requirement is also met. A class action is superior to the other

available methods for fairly and efficiently adjudicating this controversy.  This is a consumer

case in which each class member has a small claim, typically less than one thousand dollars in

statutory damages.  Where proceeding individually would be prohibitive due to the minimal

recovery, "the class action device is frequently superior to individual actions." *Seijas v. Republic*

*of Argentina,* 606 F.3d 53, 58 (2d Cir.2010).  That putative Class members in this case have

15

little, if no incentive, to prosecute their claims on an individual basis is clearly demonstrated by their lack of participation in ABBOTT'S post recall offer of reimbursement via checks and/or vouchers.  ABBOTT sent 3.45 million recall letters to SIMILAC consumers.  Responses and returns of recalled SIMILAC product and completed claim forms were made by only **4 percent** of the total notified SIMILAC consumers.  Based upon the foregoing, 96% of putative Class members, who purchased recalled SIMILAC product, did not seek reimbursement of any kind.

Class treatment is often deemed superior in "negative value" cases such as this; *i.e.,* where each individual class member's interest in the litigation is less than the anticipated cost of litigating individually. *In re Currency Conversion Fee Antitrust Litigation,* 264 F.R.D. 100, 117 (S.D.N.Y.2010); *In re Initial Public Offering Securities Litigation,* 243 F.R.D. 79 (S.D.N.Y.2007)

Together with predominance, the superiority requirement "ensures that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 104 (2d Cir.2007).  To evaluate the fairness and efficiency as a threshold matter, a principal concern regarding "superiority" is whether, in the absence of a class action, most members of the class will be deprived of any legal redress, because their claims are relatively modest compared to the cost of litigation. *Phillips Petroleum v. Shutts,* 472 U.S. 797, 809 (1985). In determining whether the superiority requirement is satisfied, the court must look to: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) any litigation regarding the controversy already commenced by

16

or against class members; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties that will be encountered in managing a class action. *Szabo,* 249 F.3d at 676 (citing FRCP 23(b) (3)). ABBOTT cannot offer any alternative form of adjudication that is superior to a Class action. We submit that a class action is a superior method for resolving this controversy, due to the low damages incentive for individual litigation and the consistency of results encouraged by class actions. The additional non-exclusive factors of Rule 23(b) prove the superiority of class action, i.e., the interests of members of the class in separate litigation, the extent of any pending litigation, any potential management difficulties, all weigh in favor of certifying the proposed class.

## C.  A Class Action is Manageable In This Litigation

Manageability compares the class action device to other methods of adjudicating the controversy. Only when management difficulties make a class action less fair and efficient than some other method, such as individual interventions or consolidation of individual lawsuits, would a class action become improper. See *1 H. Newberg, NEWBERG ON CLASS ACTIONS* § 4.32, at 4-125 (1992). Such is not the situation in the instant litigation.

While this litigation is reasonably estimated to involve at least several hundred thousand Class members, this Class action is readily manageable, particularly when compared to Rule 23 classes in other larger and more complicated cases that have been managed successfully through settlement or trial. See, *In re Visa Check/MasterMoney Antitrust Litigation,* wherein the Second Circuit affirmed certification of a class action that consisted of every business (millions) in the United States that accepted Visa and/or MasterCard credit cards. 280 F.3d. 124 (2d Cir.2001), *cert. denied,* 536 U.S. 917 (2002). The Second Circuit noted specifically that individualized

17

proof of damages does not necessarily create a bar to class actions and that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored, and should be the exception rather than the rule."; also, see *Duhaime v. John Hancock Mut. Life Ins. Co*., 177 F.RD.54 (D. Mass. 1997) ("class consists of persons or entities who have or had an ownership interest in one or more of approximately 3.8 million [insurance] policies") (nationwide class of approximately three million).

The statutory deceptive business claims in this action are particularly suited for class action treatment. See, *Jermyn v. Best Buy Stores, L.P,* .256 F.R.D. 418 (S.D.N.Y.2009), wherein a consumer, in his own right and on behalf of thousands of similarly situated New York consumers, brought action seeking injunction against electronics retailer, alleging common law false advertising, false and deceptive practice, and unjust enrichment, arising out of retailer's use of a "price match guarantee" policy.

The individuation of damages in consumer class actions is rarely determinative under Rule 23(b) (3). Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain. *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d at 139.  Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues.  Those solutions include:

(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning

how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class. *Id. at* 141.

D.    **Plaintiffs' Damages Methodology Model**

ABBOTT already possesses business records and information concerning the identity of the members of the Class and has utilized this data in the SIMILAC recall campaign.  When liability is established in this case, a specific amount of damages in fact could be determined without having each member of the class file an individual claim.  In approaching this question, it is recognized that an exact computation is not required; it is sufficient, of course, if there is relevant data from which the jury can make a just and reasonable estimate of the damage. *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946); *Wade v. Union Carbide & Carbon Corp.*, 371 U.S. 801(1962).  If a wrong has been done, courts generally can find a way of placing a value, albeit a rough one, on the amount of damages suffered. *Eisen v. Carlisle and Jacquelin, 52* F.R.D. 253 (S.D.N.Y. 1971).

Here, the following damage model functions on a classwide basis.  Even if individual Class members do not have documentation to establish damages, New York and New Hampshire consumer protection statutes quantify damages for deceptive business practices, *without actual proof of loss*.  For example, New York General Business Law, §349 (h) provides, in pertinent part, that "… any person who has been injured by  reason  of  any  violation  of  this  section may bring an action in his own name to  enjoin such unlawful act or practice, an action to  recover  his actual  damages  or  fifty  dollars, whichever is greater.."  Similarly, New Hampshire Consumer Protection Act, Title XXXI, Chapter 358A, §§ 358-A: 10 provides that "If the court finds for the plaintiff, recovery shall be in the amount of actual damages or $1,000, whichever is greater. If the court finds that the use of the method of competition or the act or practice was a willful or

knowing violation of this chapter, it shall award as much as 3 times, but not less than 2 times, such amount."

Based upon the foregoing, no separate trials will be required on the issue of damages. Damages can be calculated in a variety of ways including, on the basis of evidence maintained by individual class members, application of statutory damages, the product purchase information presently contained in ABBOTT'S business records and/or a combination of the foregoing.

**POINT V.    PUTATIVE MEMBERS OF THE CLASS SHOULD
BE NOTIFIED OF THIS LITIGATION**

In the event this Court finds that Plaintiffs have satisfied  all of the Rule 23(a) and 23(b)(3) prerequisites, and grants Class Rule 23 certification, Notice to the certified Class is appropriate and should be sent to all similarly situated persons, falling within the following Class definition:

(a)    All New York residents who purchased Similac products subject to the recall.  Excluded from the Class are officers and directors of  ABBOTT, members of the immediate families of the officers and directors of ABBOTT and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest (" New York Class").

(b)    All New Hampshire residents who purchased Similac products subject to the recall. Excluded from the Class are officers and directors of  ABBOTT, members of the immediate families of the officers and directors of ABBOTT and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest (" New Hampshire Class").

Accordingly, the Plaintiffs respectfully request that this Honorable Court certify the Rule 23 Class and  authorize Notice, in the form attached, ( see EXHIBIT "  " ) to be issued to all putative Class members.

Moreover, to facilitate Notice, Plaintiffs' seek the entry of an Order directing ABBOTT to provide a data file containing the names, last known email and/or regular post office mailing addresses and last known telephone numbers, if any, for all potential Class members. *Hoffman-LaRoche Inc. v. Sperling,* 110 S.Ct. 482 (1989).  This information should be supplied in a mutually acceptable electronic format (i.e. Microsoft Excel) so that notice is most easily accomplished.  *Masson*, 2005 WL 2000133, at*16.

## **IN CONCLUSION**

For all of the foregoing reasons, Plaintiffs' Motion for Rule 23 Class Certification should be granted in all respects.

Dated:  March 23, 2012

Respectfully submitted,

/s/ Steven Bennett Blau
Steven Bennett Blau
BLAU, BROWN & LEONARD LLC
224 West 30th Street, Suite 809
New York, New York 10001
(212) 725-7272
(212) 488-4848 (fax)

21

## <u>CERTIFICATE OF SERVICE</u>

I, STEVEN BENNETT BLAU, hereby certify that, on this date, I caused the foregoing

**Memorandum of Law** to be served upon the following via electronic filing on the ECF system:

**John D. Winter, Esq.**
**Jonah M. Knobler, Esq.**
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
Fax: (212) 336-2222
jwinter@pbwt.com
jknobler@pbwt.com
*Attorneys for Defendant*

Dated:  March 23, 2012

/s/ *Steven Bennett Blau*
Steven Bennett Blau

22