**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
KRISTIE PAGAN, ESTHER ALEXANDER,
BRIDGETT HERRERA, VELICIA MATA, and
ASHLEY SULLIVAN, individually and as
parents and natural guardians of their minor
children and on behalf of all others similarly
situated,

               Plaintiffs,

         -against-

ABBOTT LABORATORIES, INC.,

             Defendant.
----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
10-CV-4676(ADS)(WDW)

<u>**APPEARANCES:**</u>

**Blau, Brown & Leonard, LLC**
*Attorneys for the plaintiffs*
224 West 30th Street, Suite 809
New York, NY 10001
    By: Steven Bennett Blau, Esq.
       Jason T. Brown, Esq., Of Counsel

**Patterson, Belknap, Webb & Tyler LLP**
*Attorneys for the defendant*
1133 Avenue of the Americas
New York, NY 10036
    By: John D. Winter, Esq., Of Counsel

**SPATT, District Judge**.

      This case arises from the recall by Abbott Laboratories, Inc. ("Abbott" or "the

Defendant") of five million containers of its Similac brand infant powder formula that were

potentially contaminated with beetle parts and larvae, which could cause gastrointestinal

discomfort and refusal to eat. The Plaintiffs allege that Abbott engaged in unfair and deceptive

practices by misrepresenting the safety of Similac and failing to timely warn consumers of the

1

dangers associated with the contaminated product in violation of the consumer protection statutes in New York and New Hampshire.

Presently before the Court is a motion by the Plaintiffs for class certification and a motion by the Defendant to strike the Plaintiffs' reply or, in the alternative, to file a sur-reply. For the reasons set forth below, the Court (1) denies the Defendant's motion to strike the Plaintiffs' reply; (2) grants the Defendant's motion to file a sur-reply; and (3) denies the Plaintiffs' motion for class certification.

## I. BACKGROUND

Abbott formulates, designs, manufactures, markets, advertises, distributes and sells infant powder formulas under the brand name Similac. In September 2010, during an internal quality review at its Sturgis, Michigan facility ("the Sturgis Facility"), Abbott detected the presence of a common warehouse beetle and its larvae in its powdered formula. Subsequently, on September 20, 2010, Abbott notified the United States Food and Drug Administration ("FDA") "that based on its facility inspection, root cause investigation, and finished and in-process infant formula powder test results they would be initiating a product recall." (Def. Opp., Ex. E.) As a result, on September 22, 2010, Abbott recalled five million containers of Similac infant formula products (Def. Opp., Exh. F).

The original plaintiffs in this case were Shelley A. Leonard, a resident and citizen of the State of New York ("the New York Plaintiff"); residents and citizens of the State of Texas Esther Alexander, Bridgett Herrera, and Velicia Mata ("the Texas Plaintiffs"); LeRon Davis, a resident and citizen of the State of Ohio ("the Ohio Plaintiff"); and Ashley Sullivan, a resident and citizen of New Hampshire ("the New Hampshire Plaintiff" and collectively "the Plaintiffs"). According to the Plaintiffs, they each purchased the recalled formula during an undefined "relevant time

period," rather than purchasing a less expensive alternative, based on various statements by Abbott that indicated that Similac was safe for consumption by infants. The Plaintiffs also allege that their infant children became ill after consuming the contaminated Similac formula.

On October 10, 2010, the Plaintiffs commenced this action against Abbott in their individual capacity, as parents and natural guardians of their minor children, and as representatives of putative classes of similarly situated individuals from their respective states. In the original complaint, and the first amended class action complaint filed on December 2, 2010, the Plaintiffs seek declaratory, injunctive, and monetary relief. The relief is based on Abbott's alleged unfair and deceptive acts and practices in misrepresenting that Similac was "safe for the consumption by infants" and failing to warn consumers or recall the contaminated formula sooner, in violation of: (1) New York General Business Law § 349 ("NYGBL"); (2) the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPA"), Tex. Code. Bus. & Com. § 17.41, *et seq.*; (3) the Ohio Uniform Deceptive Trade Practices Act ("ODTPA"), Ohio Rev. Code Ann. § 4165, *et seq.*, and Uniform Consumer Sales Practices Act ("OCSPA" and together with the ODTPA the "Ohio statutes"), Ohio Rev. Code Ann. § 1345, *e. seq.*; and (4) the New Hampshire Consumer Protection Act ("NHCPA"), N.H. Rev. Stat. Ann. § 358-A, *e. seq.* (collectively the "consumer protection statutes").

On March 15, 2011, Abbott filed a motion for judgment on the pleadings seeking, among other things, the dismissal of the Plaintiffs' claims under the consumer protection statutes and the cause of action seeking injunctive relief for failure to state a claim. On September 21, 2011, the Plaintiffs moved to amend their complaint to: (1) include Kristie Pagan in the caption of this matter as a party plaintiff and potential representative of the putative New York class; (2) remove plaintiff Shelly A. Leonard from the caption in this matter and dismiss her claims

without prejudice with leave to renew her individual claims or any claims on behalf of her infant/child in the event the Court certifies a class under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23; (3) include additional factual contentions concerning the alleged false, misleading, fraudulent and deceptive business practices of the Defendant; and (4) to remove the allegation expressly waiving the New York Plaintiffs' right to seek punitive damages under New York General Business Law § 349. Attached to the Plaintiffs' motion to amend was a proposed second amended complaint containing these changes. Subsequently, on January 20, 2012, the Court directed the parties to submit supplemental briefing on whether the Recall program instituted by Abbott mooted the Plaintiffs' claims under the consumer protection statutes, which was an issue raised by Abbott in opposition to the motion to amend.

On March 5, 2012, the Court issued an Order in which it (1) dismissed the plaintiff Shelly A. Leonard's claims pursuant to Rule 41(a)(2) without prejudice with leave to renew her individual claims or any claims on behalf of her infant/child in the event the Court certified a class under the Fed. R. Civ. P. 23; (2) granted the Plaintiffs' motion to add Kristie Pagan as a plaintiff and putative New York class representative; (3) denied the Plaintiffs' motion to amend the complaint to remove the New York Plaintiff's express waiver of punitive damages under the NYGBL; (4) granted the Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) dismissing the Ohio Plaintiff's claims under the OCSPA and ODTPA; (5) directed the Texas Plaintiffs to provide notice to Abbott within twenty days of the date of the Order and notify the Court when they had done so and abated the Texas Plaintiffs' TDTPA claim for sixty days after the Texas Plaintiffs served written notice; (6) denied the Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) as to the Plaintiffs' claims under the NYGBL, NHCPA, and TDTPA; (7) granted the Defendant's motion for judgment on the pleadings

pursuant to Rule 12(c) as to the Plaintiffs' claim for injunctive relief; (8) directed the Plaintiffs to file a second amended complaint consistent with the rulings contained within the Order within 20 days of the date of the Order and advised that if the Texas Plaintiffs did not comply with the notice requirement within twenty days of the date of the Order, the Court would consider a motion by the Defendant to dismiss any claims asserted on behalf of the Texas Plaintiffs in the second amended complaint. See Leonard v. Abbott Labs., Inc., 10-CV-4676(ADS)(WDW), 2012 U.S. Dist. LEXIS 30608 (E.D.N.Y. Mar. 5, 2012).

On March 13, 2012, the Plaintiffs filed a second amended complaint in compliance with the Court's March 5, 2012 Order. The Defendant answered the Plaintiffs' second amended complaint on March 27, 2012.

On March 23, 2012, the Plaintiffs' moved pursuant to Fed. R. Civ. P. 23 for an Order certifying this civil litigation as a Class Action with respect to the New York and New Hampshire subclasses. They defined the putative class as (1) "all New York residents who purchased Similac products subject to the recall" and (2) "all New Hampshire residents who purchased Similac products subject to the recall." (Pl. Mem. in Support, pg. 20.) The Plaintiffs further moved to certify the plaintiff Kristie Pagan as the representative of the New York Class and the plaintiff Ashley Sullivan as the representative of the New Hampshire Class. On May 9, 2012, the Defendant submitted opposition papers to the Plaintiffs' motion contending that the Plaintiffs had not met their burden of affirmatively demonstrating that they had met the requirements of Rule 23(a) and Rule 23(b)(3). On May 30, 2012, the Plaintiffs submitted a reply in support of their motion on May 30, 2012, which included ten exhibits not previously cited in their original motion papers.

On June 5, 2012, the Defendant moved to strike certain portions of the Plaintiffs' reply or, in the alternative, for leave to file a sur-reply on the ground that the Plaintiffs' reply improperly included new factual assertions, legal claims and exhibits not contained in their initial moving papers. The Plaintiffs submitted opposition papers to this motion on July 2, 2012 and the Defendant submitted its reply in support on July 9, 2012.

The Court addresses the two motions below. However, because the Court cannot analyze the Plaintiffs' motion for class certification without first resolving the Defendant's motion to strike certain portions of the Plaintiffs' reply or, in the alternative, for leave to file a sur-reply, the Court will first consider the Defendant's motion before proceeding to consideration of the Plaintiffs' motion.

## II. THE DEFENDANT'S MOTION TO STRIKE CERTAIN PORTIONS OF THE PLAINTIFFS' REPLY OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE A SUR-REPLY

"Although it is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden, this Court has discretion to consider documents filed in violation of procedural rules." Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C., 07 Civ. 0612 (BMC), 2011 U.S. Dist. LEXIS 110955, at *6 n. 1 (E.D.N.Y. Sept. 27, 2011) (citation and internal quotation marks omitted). Likewise, "[m]otions for leave to file sur-reply information and to strike are subject to the sound discretion of the court." De Pedrero v. Schweizer Aircraft Corp., 635 F. Supp. 2d 251, 258 (W.D.N.Y. 2009).

In this case, the Plaintiffs' reply clearly raised new factual and legal issues. However, as the Defendant has submitted a sur-reply as well as supporting documentation, the Court is persuaded that they have suffered no prejudice. Toure v. Cent. Parking Sys., 05 Civ. 5237

(WHP), 2007 U.S. Dist. LEXIS 74056, at *4 (S.D.N.Y. Sept. 28, 2007). Therefore, exercising

its discretion, the Court will consider the Defendant's sur-reply and will not strike the Plaintiffs'

reply. See  Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Sup. 2d 381, 387

(S.D.N.Y. 2010); Sevenson Envtl. Servs. v. Shaw Envtl., Inc., 246 F.R.D. 151, 154 (W.D.N.Y.

2007).

## III.  THE PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION

## A.  Legal Standard

Before certifying a putative class, the Court must determine (1) whether the class meets

the four Rule 23(a) requirements of numerosity, commonality, typicality and adequacy; and if so,

(2) whether the class satisfies one of the three categories listed in Rule 23(b).  See Brown v.

Kelly, 609 F.3d 467, 476 (2d Cir. 2010); Teamsters Local 445 Freight Div. Pension Fund v.

Bombardier, Inc., 546 F.3d 196, 202 (2d Cir. 2008); City of Livonia Employees' Ret. Sys. v.

Wyeth, No. 07 Civ. 10329 (RJS), 2012 U.S. Dist. LEXIS 134854, at *4 (S.D.N.Y. Sept. 17,

2012).  "The party seeking class certification bears the burden of establishing by a

preponderance of the evidence that each of Rule 23's requirements has been met."  Myers v.

Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010).

As the Supreme Court recently observed:

> Rule 23 does not set forth a mere pleading standard. A party
> seeking class certification must affirmatively demonstrate his
> compliance with the Rule--that is, he must be prepared to prove
> that there are in fact sufficiently numerous parties, common
> questions of law or fact, etc . . . [S]ometimes it may be necessary
> for the court to probe behind the pleadings before coming to rest
> on the certification question, and [] certification is proper only if
> the trial court is satisfied, after a rigorous analysis, that the
> prerequisites of Rule 23(a) have been satisfied.  Frequently that
> rigorous analysis will entail some overlap with the merits of the
> plaintiff's underlying claim. That cannot be helped.

Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, __, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374, 390 (2011) (citations and internal quotation marks omitted); see also Secs. Litig. v. Gen. Reinsurance Corp. (In re Am. Int'l Group Inc.), 689 F.3d 229, 237 (2d Cir. 2012); Oakley v. Verizon Comm'ns., Inc., No. 09 Civ. 9175 (CM), 2012 U.S. Dist. LEXIS 12975, at *34 (S.D.N.Y. Feb. 1, 2012) (holding that while "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, . . . where merits issues cannot be avoided they must be addressed"). Thus, "the United States Supreme Court has made it clear that courts cannot certify classes where Rule 23 requirements are not met, and should not contort the requirements in order to certify." Oakley, 2012 U.S. Dist. LEXIS at *35.

However, in deciding certification, courts must still take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class. See Flores v. Anjost Corp., No. 11 Civ. 1531 (CM), 2012 U.S. Dist. LEXIS 85171, at *20-21 (S.D.N.Y. June 19, 2012); Pecere v. Empire Blue Cross and Blue Shield, 194 F.R.D. 66, 69 (E.D.N.Y. 2000). Further, "[t]he dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Kowalski v. YellowPages.com, LLC, 10 Civ. 7318 (PGG), 2012 U.S. Dist. LEXIS 46539, at *37 (S.D.N.Y. Mar. 31, 2012).

### 1. Rule 23(a) Requirements

To qualify for class certification, the Plaintiff must first prove that the putative class meets the four threshold requirements of Rule 23(a):

> 1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

> representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a); <u>see</u> <u>also</u> <u>Steinberg v. Nationwide Mut. Ins. Co.</u>, 224 F.R.D. 67, 72

<u>(E.D.N.Y. 2004)</u>

### *a. Numerosity*

Rule 23(a)(1), known as the numerosity requirement, requires that the class be "so

numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

"Impracticable," in this context, does not mean impossible; instead Rule 23(a)(1) only requires

that, in the absence of a class action, joinder would be "simply difficult or inconvenient." <u>Russo</u>

<u>v. CVS Pharm., Inc.</u>, 201 F.R.D. 291, 294 (D. Conn. 2001); <u>see also</u> <u>Robidoux v. Celani</u>, 987

F.2d 931, 935 (2d Cir. 1993).

"There is no magic minimum number that will breathe life into a class, but generally,

courts will find a class sufficiently numerous when it comprises forty or more members." <u>Russo</u>,

201 F.R.D. at 294 (citations and internal quotation marks omitted). "As plaintiff bears the

burden of demonstrating numerosity, he must show some evidence of or reasonably estimate the

number of class members." <u>Id.</u> at 295. Therefore, while "evidence of exact size or identity of

class members is not required," a plaintiff cannot rely on "pure speculation or bare allegations"

in order to demonstrate numerosity. <u>Flores</u>, 2012 U.S. Dist. LEXIS at *25 (citations and internal

quotation marks omitted).

However, "in assessing numerosity[,] a court may [also] make common sense

assumptions without the need for precise quantification of the class." <u>Russo</u>, 201 F.R.D. at 294;

<u>see</u> <u>also</u> <u>Flores</u>, 2012 U.S. Dist. LEXIS at *24-25. In addition, particularly when a class is not

obviously numerous, the Court should consider the following factors: "judicial economy arising

from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." Robidoux, 987 F.2d at 936; see also Pecere, 194 F.R.D. at 70; see also Martin v. Shell Oil Co., 198 F.R.D. 589, 590 (D. Conn. 2000).

### b. Commonality

"To satisfy the commonality requirement of Rule 23(a)(2), there must be 'a showing that common issues of fact or law exist and that they affect all class members.'" Kowalski, 2012 U.S. Dist. LEXIS at *41-42 (quoting Leone v. Ashwood Fin., Inc., 257 F.R.D. 343, 351 (E.D.N.Y. 2009)). "However, the individual circumstances of the class members can differ without precluding class certification," so long as "the common questions are at the core of the cause of action alleged." Steinberg, 224 F.R.D. 67, 72 (E.D.N.Y. 2004); see also Kowalski, 2012 U.S. Dist. LEXIS at *42 (holding that "[t]he commonality standard does not mandate that the claims of the lead plaintiff be identical to those of all other plaintiffs" but does "require[] that plaintiffs identify some unifying thread among the members' claims that warrants class treatment") (citations and internal quotation marks omitted).

In its recent decision in Wal-Mart Stores Inc. v. Dukes, the Supreme Court held that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," as opposed to simply "suffer[ing] a violation of the same provision of law." Dukes, 131 S. Ct. at 2551. In other words, "[t]heir claims must depend upon a common contention . . . that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. Thus, "[w]hat really matters to class certification ... is not the raising of

common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. at 2551 (citations and internal question marks omitted) (emphasis in original); see also Flores, 2012 U.S. Dist. LEXIS at *31.

### c. *Typicality*

Rule 23(a)(3) requires that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux, 987 F.2d at 936. Known as the typicality requirement, this provision "is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation." Steinberg, 224 F.R.D. at 72. However, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Id. at 936-937; see also Steinberg, 224 F.R.D. at 72-73 (holding that "[t]he mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification") (citations and internal quotation marks omitted).

### d. *Adequacy of Representation*

Rule 23(a)(4)'s adequacy of representation requirement requires that a plaintiff "also show that the proposed action will fairly and adequately protect the interests of the class," Vengurlekar v. Silverline Techs., Ltd., 220 F.R.D. 222, 227 (S.D.N.Y. 2003), and "serves to uncover conflicts of interest between names parties and the class they seek to represent," Wyeth, 2012 U.S. Dist. LEXIS at *14. See Vengurlekar, 220 F.R.D. at 227 ("The adequacy inquiry

under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.") (citation omitted).

In order to satisfy Rule 23(a)(4), a "plaintiff[] first must demonstrate that class counsel is qualified, experienced, and generally able to conduct the litigation." Id. (citations and internal quotation marks omitted). Second, a plaintiff must "show that [he has] no interests that are antagonistic to the proposed class members." Id.

### 2. Rule 23(b)(3) Requirements

Once a plaintiff satisfies the four Rule 23(a) requirements, she must then also prove that the putative class is maintainable under at least one of the three categories enumerated in Rule 23(b). See Steinberg, 224 F.R.D. at 73. In this case, the Plaintiffs seek class certification under Rule 23(b)(3). A putative class is maintainable under Rule 23(b)(3) when "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). See In re Am. Int'l Group Inc., 689 F.3d at 239.

#### a. Predominance

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" in order to "ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Myers, 624 F.3d at 547 (citations and internal quotation marks and alterations omitted); see also Steinberg, 224 F.R.D. at 73. Thus, "[w]hile the commonality requirement of Rule 23(a)(2) mandates that common questions of law or fact

exist among the putative class members," the predominance requirement of Rule 23(b)(3) "is more stringent and requires that such common questions be the focus of the litigation." Steinberg, 224 F.R.D. at 73. Accordingly, "the requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Myers, 624 F.3d at 547 (citations and internal quotation marks omitted); see also Steinberg, 224 F.R.D. at 73 ("Common questions of law and fact predominate when issues subject to generalized proof and applicable to the class as a whole predominate over and are more substantial than issues that are subject only to individualized proof.").

### b. Superiority

"The second prong of Rule 23(b)(3), commonly referred to as the superiority element, requires the court to examine whether a class action is superior to other methods of adjudication." Steinberg, 224 F.R.D. at 73. Four factors the Court should consider in determining whether a class action is the superior method of adjudicating a putative class' claim are provided in Rule 23(b)(3):

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). See also Oakley, 2012 U.S. Dist. LEXIS at *49-50.

**B.  Discussion**

### 1.  Rule 23(a) Requirements

#### a.  *Numerosity*

In their initial motion papers for class certification, the Plaintiffs argue that they "easily surpass the numerosity hurdle [set forth in Rule 23(a)(1)] and reasonably estimate at least several hundred thousand putative Class members from New York and New Hampshire who were ultimate consumers of the recalled SIMILAC products."  (Pl. Mem. in Support, pg. 9).  However, the Plaintiffs point to no evidence for this claim nor explain to the Court why this is a reasonable estimate.  Pecere, 194 F.R.D. at 70 ("No information is provided as to the methodology used to reach this conclusion, and therefore, it will not suffice to establish a reasonable estimate of the number of persons who fit within the proposed class.").  As such, at the outset, the Plaintiffs fail to meet their burden under Rule 23(a)(1).  See id.  ("[A]s the bearers of the burden to show joinder is impracticable, plaintiffs must show some evidence of or reasonably estimate the number of class members."); Martin., 198 F.R.D. at 590 (finding that "an estimate based on speculation is insufficient").

Perhaps realizing their error, the Plaintiffs in their reply papers attempt to rectify this mistake by asserting that "ABBOT has provided responses to Plaintiffs' Second Set of Interrogatories, indicating that '182,092 end-consumer recall-notification letters were mailed between September 24, 2010 and November 30, 2010, to residential addresses in the state of New York' and '16,893 end-consumer recall-notification letters were mailed between September 25, 2010 and November 30, 2010, to residential addresses in the state of New Hampshire.'" (Pl.

Reply, pg. 6.)  These figures, however, still do not affirmatively demonstrate numerosity, as the class that the Plaintiffs seek to certify encompasses only those residents in New York and New Hampshire who purchased recalled Similac.  As the Defendant's responses to the Plaintiffs' Second Set of Interrogatories explain, "the mere receipt of a recall-notification letter does not mean the recipient has any legal claim against Abbott; that the recipient purchased defective Similac; that the recipient purchased Similac at all; or that recipient is a member of the putative class in this action."  (Pl. Reply, Exh. J.)  Indeed, many recipients of the recall-notification letters had actually received free samples of Similac, and thus were not purchasers (Def. Opp., Exh. C.)

While the Court may make reasonable inferences from available facts, <u>see</u> <u>Vengurlekar</u>, 220 F.R.D. at 227, the Plaintiffs here have provided no specific evidence to allow the Court to do so.  Accordingly, as the Plaintiffs' "assertion of numerosity is based on pure speculation [and] bare allegations, the motion for class certification fails."  <u>Lewis v. Nat'l Fin. Sys.</u>, Civil Action No. 06-1308 (DRH) (ARL), 2007 U.S. Dist. LEXIS 62320, at *22 (E.D.N.Y. Aug. 23, 2007).

### *b.  Commonality*

Even assuming that the Plaintiffs met Rule 23(a)(1)'s numerosity requirement, the Plaintiffs have not satisfied the commonality requirement of Rule 23(a)(2).  According to the Plaintiffs' initial motion papers, the common questions in this case are:

> (a)  With respect to the New York class, whether ABBOTT's deceptive acts or practices in the conduct of its business, trade or commerce of Similac products, violated § 349 of the New York General Business Law.
> (b)  With respect to the New Hampshire class, whether ABBOTT's deceptive acts or practices in the conduct of its business, trade or commerce of SImilac products, violated the New Hampshire Consumer Protection Act, Title XXXI, Chapter 358A, §§ 358a:2 *et. Seq.*

(c) Whether ABBOTT's deceptive business practices caused injury/damage to ultimate consumers of the recalled Similac products including Plaintiffs and putative members of the class.

(Pl. Mem. in Support, pg. 10.)

However, merely raising common questions, as the Plaintiffs do in their motion papers, is not sufficient to satisfy Rule 23(a)(2). Dukes, 131 S. Ct. at 2551. Instead, as the Supreme Court articulated in Dukes, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that a class action proceeding is capable of "generat[ing] common answers apt to drive the resolution of the litigation." Id. Importantly, the fact that the Plaintiffs may have suffered a violation of the same provision of law—that is, the NYGBL or the NHCPA—does not necessarily mean they suffered the same injury under the Dukes standard. Id.

Moreover, the Plaintiffs' position ignores that New York's consumer protection statute requires that a party seeking a private right of action demonstrate an actual injury. NYGBL § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring an action in his own name . . . to recover his actual damages or fifty dollars, whichever is greater[.]"); see also Himber v. Intuit, Inc., No. 10-CV-2511 (JFB)(AKT), 2012 U.S. Dist. LEXIS 137553, at *28-29 (E.D.N.Y. Sept. 25, 2012). Thus, the Plaintiffs must demonstrate that Abbott "has engaged in an act or practice that is deceptive or misleading in a material way and that [the Plaintiffs have] been injured by reason thereof." Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 55-56 (1999) (citations and internal quotation marks omitted). In other words, the Plaintiffs must present "proof that a material deceptive act or practice caused actual, although not necessarily pecuniary, harm." Id. See Derbaremdiker v. Applebee's Int'l, Inc., 12-CV-01058 (KAM), 2012 U.S. Dist. LEXIS 138596, at *23-24 (E.D.N.Y. Sept. 26, 2012) (holding that the

plaintiff's attempt to "set[] forth deception as both act and injury" was insufficient, because a plaintiff "must allege actual or pecuniary harm that is separate and apart from the alleged deception itself.").

Here, the Plaintiffs have presented no such proof on behalf of the class members in the New York class. Rather, the evidence in this case suggests that most of the members of this class would have not suffered any injury at all because almost all of the recalled Similac did not, in fact, contain any beetle parts. Specifically, testing of a sample of the recalled Similac showed that only approximately 0.16%, or 1 per 625 containers, were actually contaminated with beetles, larvae and/or parts. (Def. Sur-Reply, Exh. A). Plaintiffs have presented no evidence that would counter these results and have only provided the Court with unsupported and misleading statements concerning the number of recalled Similac that contained beetle parts. (Pl. Reply, pg. 2; Def. Sur-Reply, pg. 4-5). Accordingly, the Plaintiffs have not satisfied the commonality requirement for the New York class, because they have not adequately demonstrated how the Defendant's alleged deceptive practices caused any injury, let alone the same injury, to the majority of the class members.

With respect to the New Hampshire class, although the plain language of NHCPA § 358-A:10 "would seem to mandate that only persons injured by an unlawful act or practice may bring suit, the New Hampshire Supreme Court has held to the contrary, and has interpreted the [NH]CPA to permit plaintiffs to recover statutory damages even in the absence of an injury legally caused by the defendant." Elmo v. Callahan, Civil No. 10-cv-286-JL, 2012 U.S. Dist. LEXIS 120142, at *30 (D.N.H. Aug. 24, 2012); see Becksted v. Nadeau, 1155 N.H. 615, 620-21 (2007). Nevertheless, the NHCPA still requires that the Plaintiffs show that the class members were personally harmed in some way by the Defendant's unlawful conduct. See Lakeview

Mgmt., Inc. v. Care Realty, LLC, Civil No. 07-cv-303-SM, 2009 U.S. Dist. LEXIS 28171, at *68-69 (D.N.H. Mar. 30, 2009) (holding, among other things, that the plaintiff was not entitled to judgment of it supplemental claim for violation of the NHCPA because the plaintiff "was not harmed by any of the alleged conduct on which [that] claim[] [is] based"); State v. Hynes, 159 N.H. 187, 196 (2009) (holding, among other things, that an attorney was not an aggrieved person with standing to assert a claim under the NHCPA against a hair salon where he did not personally patronize the hair salon, because § 358-A:10 "confer[s] private-party standing upon only those 'injured by another's use of any . . . practice declared unlawful.'").

Thus, it is not enough for the Plaintiffs to merely show that the class members of the New Hampshire class purchased recalled Similac; the Plaintiffs need to demonstrate that the recalled Similac that the class members purchased actually contained beetle parts.  Yet, as the evidence discussed above indicates, less than 1% of all recalled Similac were even contaminated with beetle parts.  Therefore, it is unlikely that most of the members of the New Hampshire class were personally affected or harmed by Abbott's alleged deceptive acts.

Furthermore, the Plaintiffs assert "that had they know the truth that the statements they relied upon were false, misleading, deceptive and unfair and that SIMILAC products were adulterated with contaminants, including insect/beetle particles and larvae, they would have neither purchased SIMILAC, nor paid the premium price ABBOTT charges for." (Pl. Reply, pg. 7; see also Pl. Mem., pg. 5.)  However, this argument is also insufficient to satisfy the commonality requirement, because the Plaintiffs' underlying claim— "that SIMILAC products were adulterated with contaminants, including insect/beetle particles and larvae" —does not cover most of the potential class members.  In fact, based on the evidence available to the Court, almost all of the class members would have actually purchased non-contaminated Similac

products.  As such, it appears that the majority of the putative class members received exactly what they paid to receive and, thus, cannot now claim injury.  <u>See</u>, <u>e.g.</u>, <u>In re McNeil Consumer Healthcare</u>, MDL No. 2190, 2012 U.S. Dist. LEXIS 98312, at *45-55 (E.D. Pa July 13, 2012).

In addition, any attempt by the Plaintiffs to establish commonality through the availability of a minimum amount of statutory damages is without merit.  The existence of a minimum amount of statutory damages does not assist the Plaintiffs in overcoming the hurdle of affirmatively demonstrating commonality, because, as explained above, the Plaintiffs need to first show that the class members have been injured or harmed in the same way. <u>See</u> <u>Himber</u>, 2012 U.S. Dist. LEXIS at *27-29 ("[T]he lack of a non-speculative, non-hypothetical injury in this case is not cured by the existence of statutory damages under the relevant statutory provision[.]") .

Lastly, in their reply papers, the Plaintiffs curiously suggest that the Supreme Court's analysis of commonality in <u>Dukes</u> "has absolutely nothing to do with this case," (Pl. Reply, pg. 7), even though they relied upon this same analysis in their original motion papers, (Pl. Mem. in Support, pg. 10).  In any event, despite the Plaintiffs' contention, the Court find the <u>Dukes</u> analysis has been applied by courts to a variety of class action cases, including cases involving consumer fraud, and, thus, it sees no reason why it should not be applied in the present case. <u>See</u>, <u>e.g.</u>, <u>Kowalski</u>, 2012 U.S. Dist. LEXIS at *43-45 (denying class certification after applying the <u>Dukes</u> commonality analysis in a case where plaintiffs were alleging violations of the New Jersey Consumer Fraud Act); <u>Engel v. Scully & Scully, Inc.</u>, 279 F.R.D. 117, 128 (S.D.N.Y. 2011) (applying the <u>Dukes</u> commonality analysis in a putative class action brought under the Fair and Accurate Credit transactions Act, 15 U.S.C § 1681c(g)).

In sum, the Plaintiffs have failed to meet their burden of affirmatively demonstrating they satisfy the commonality requirement of Rule 23(a)(2) and, thus, their motion for class certification must be denied.

### c. *Typicality*

The Plaintiffs have also not satisfied the typicality requirement of Rule 23(a)(3) for many of the reasons that the commonality requirement has not been met. See <u>Dukes</u>, 131 S. Ct. at 2551 n. 5 (noting that "the commonality and typicality requirements of Rule 23(a) tend to merge" because "both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence") (citation and internal quotation marks omitted).

Specifically, the claims of the Plaintiffs do not sufficiently relate to those of the proposed class, as the majority of the class members would not have purchased Similac product that contained beetle parts. Therefore, whereas the Plaintiffs seek damages for medical costs and pain and suffering, most of the members of the class would not have incurred these kinds of expenses. See <u>Brown</u>, 609 F.3d at 475 ("Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members" and is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

### d. *Adequacy of Representation*

Lastly, with respect to Rule 23(a)(4)'s adequacy of representation requirement, the Court finds that the Plaintiffs have failed to affirmatively demonstrate that they will be able to adequately represent the proposed putative class as the class representatives because this "action

involves a host of legal and factual issues unique to them and that are likely to distract from their representation of the class." Id. at 479.  Such issues include whether the symptoms of Plaintiff Pagan's child were actually caused by a stomach virus and not the recalled Similac, and whether the Plaintiff Sullivan's act of discarding her recalled Similac before it could be tested constituted spoliation of evidence.  In addition, the fact that the Plaintiff Pagan's recalled Similac product was found to not contain any beetle parts raises additional unique challenges.  Consequently, "[w]hile it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate" in this case because the Plainttifs are "subject to unique defenses which threaten to become the focus of the litigation."  Id. at 480.

As the Plaintiffs have failed to meet their burden of affirmatively demonstrating that they satisfy any of the requirements of Rule 23(a), the Court need not consider whether the Plaintiffs met the predominance and superiority requirements under Rule 23(b)(3).  Nevertheless, in order to provide a more thorough analysis, the Court will proceed to evaluate whether the Plaintiffs satisfied these requirements below.

### 2. Rule 23(b)(3) Requirements

#### a. Predominance

First, because the Plaintiffs have failed to meet their burden of affirmatively demonstrating commonality under Rule 23(a)(2), they have clearly not satisfied the predominance requirement of 23(b)(3) because they have not established that common questions exist between the putative class members that could be the focus of the ligation.  See Steinberg, 224 F.R.D. at 73.   However, even assuming that the Plaintiffs had satisfied all the requirements of Rule 23(a), including commonality, they still would not meet the predominance requirement

set forth in Rule 23(b)(3). Specifically, the Plaintiffs have not adequately demonstrated that common issues will dominate over individual issues, since individual inquiries will be required in order to determine (1) who among the class members actually purchased recalled Similac that contained beetle parts; (2) whether those who did purchase recalled Similac containing beetle parts sustained any injuries; and (3) whether the contaminated recalled Similac was the cause of said injuries. As such, the Plaintiffs have failed to satisfy the predominance requirement. See Heerwagenv. Clear Channel Comm'ns., 435 F.3d 219, 226 (2d Cir. 2006) ("To meet the predominance requirement of Rule 23(b)(3) . . . a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof.").

### b. Superiority

Finally, despite the Plaintiffs' arguments to the contrary, a class action is not a superior method of adjudication for this claim and, therefore, the Plaintiff does not satisfy Rule 23(b)(3)'s superiority requirement.

As the Court has previously noted, "[t]he wisdom of the Plaintiffs' decision to forgo the Recall program is questionable, particularly in light of the number of cases that have denied class certification in consumer class actions because a voluntary recall and/or refund program provided a superior method of compensating the putative class members." Leonard, 2012 U.S. Dist. LEXIS at *76-77. This is because "[w]here available refunds afford class members a comparable or even better remedy than they could hope to achieve in court, a class action would merely divert a substantial percentage of the refunds' aggregate value to the class lawyers." Id. at *77 (quoting In re Aqua Dots Products Liability Litigation, 270 F.R.D. 377, 383-85 (N.D.Ill. 2010)). Thus, "rational class members would not choose to litigate a multiyear class action just

to procure refunds that are readily available here and now." <u>Id.</u>  Although the Plaintiffs argue that the Defendant's voluntary recall was an inadequate remedy because only 4% of the total notified Similac consumers sought a refund, (Pl. Mem. in Support, pg. 16), this fact alone does not establish that the voluntary recall was inadequate, as many of the purchasers of the recalled Similac could have either returned their products to the store in which they bought them or simply did not felt aggrieved enough to seek a refund.

"Furthermore, where, as here, individual factual issues . . .predominate over common issues of fact, a class action is not a superior method for fair and efficient adjudication." <u>Pecere</u>, 194 F.R.D. at 72 (citation and internal quotation marks omitted).  As already discussed above, individual factors such as injury and causation predominate over common issues of fact. Therefore, the class is unmanageable.  <u>See</u> Brandner <u>v. Abbott Laboratories, Inc.,</u> Civil Action No: 10-3242 Section: R(3), 2012 U.S. Dist. LEXIS 7017, at *30 (E.D.La. Jan. 23, 2012) ("The need to prove contamination on a plaintiff-by-plaintiff basis makes the proposed class distinctly unmanageable.").  In addition, the Court notes that the class will also be difficult to notify and verify, because the Defendant does not have records of everyone who purchased Similac in the states of New York and New Hampshire, as Similac is an over-the-counter product and is frequently paid for in cash.  (<u>See</u> Def. Opp., Exh. C.)

## IV.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Defendant's motion to strike certain portions of the Plaintiffs' reply is **DENIED**; and it is further

**ORDERED**, that the Defendant's motion for leave to file a sur-reply is **GRANTED**; and it is further

**ORDERED**, that the Plaintiffs' motion for class certification pursuant to Rule 23 is

**DENIED**.

**SO ORDERED.**
Dated:  Central Islip, New York
          October 20, 2012

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge